### RATHBUN v. MILLER et al.　(No. 1679.)

(Court of Civil Appeals of Texas. El Paso. Nov. 20, 1924.)

**1. Sales ☞422—Jury's finding held not to require different judgment, in view of other findings.**

In action for damages for defective construction and installation of refrigeration plant, jury's special finding that plant was built and installed in substantial compliance with agreement and plan, *held* not to require judgment for defendant, in view of findings as to defendant's representations, and failure of plant to maintain temperature represented.

**2. Trial ☞360—That special issue called for evidentiary facts, and was immaterial, not ground for reversal.**

That special issue submitted was as to evidentiary matter and immaterial, is not ground for reversal, it being treated as surplusage.

**3. Sales ☞418(2)—Measure of damages for defective installation of refrigeration plant is difference between contract price and reasonable value.**

Measure of damages for defective construction and installation of refrigeration plant, where plaintiffs retained and used plant, is difference between contract price and reasonable value of plant at time plaintiffs accepted and appropriated it.

**4. Appeal and error ☞1050(1)—Evidence ☞317(6)—Testimony as to value of refrigeration plant, based on statements of others held hearsay, and its admission reversible error.**

In action for damages for defective construction and installation of refrigeration plant, testimony of plaintiffs as to value of plant and cost of reconstruction, based on statements of others, *held* hearsay and its admission reversible error.

**5. Appeal and error ☞1046(5), 1050(1, 4)—Remark of court, admission of copy of letter and of evidence, considered as whole, held reversible error.**

Court's remark, upon objection to question as leading, that witness could not be led, admission of copy of letter without predicate having been laid for its introduction, and admission of hearsay testimony, when considered as whole, *held* reversible error, in view of sharply conflicting evidence.

Appeal from District Court, El Paso County; W. D. Howe, Judge.

Action by N. F. Miller and another against Don Rathbun. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

Goggin, Hunter & Brown, of El Paso, for appellant.

Roy D. Jackson and Whitaker & Peticolas, all of El Paso, for appellees.

HIGGINS, J. This suit was brought by N. F. Miller and E. C. Moore, partners, against Don Rathbun, for damages growing out of the alleged faulty construction of a cold storage and refrigeration plant. It was alleged that the plant was not built in accordance with representations made at the time of the execution of the contract inducing its execution, and that it was not built in accordance with the contract between the parties; that it would not function properly, and would not retain low temperature. It was alleged that the representations which were relied upon by the plaintiffs were false and fraudulent, and that the plant did not measure up to same, and was poorly insulated and poorly constructed and its use had to be abandoned. Plaintiffs sued for the difference in value of the plant as constructed and as alleged it should have been constructed; for loss of ice in melting; and for money alleged to have been spent for water and power over the amount required to operate the plant had it been properly constructed.

The defendant answered by a general denial, and pleaded the contract and a substantial compliance therewith, alleging that the plant measured up to the accepted and usual standard for plants of that character, and was reasonably sufficient under ordinary and normal conditions with proper operation to do the work for which it was intended, and further alleged that the defendant was always ready to do anything reasonably necessary to make the plant meet any reasonable requirements, and so informed the plaintiffs, who refused to permit him to make any repairs or changes except in accordance with their own ideas, and unreasonably demanded that the plant be entirely rebuilt without reference to the necessity therefor, and waived any further compliance with the contract, and by their refusal to permit him to make any proper changes were estopped to claim that he had not complied with the contract. He also alleged that the plant was built in substantial compliance with the contract and plans as modified by the parties, and any difficulty met with by plaintiffs was on account of improper operation by them.

The case was tried before a jury, and upon its findings in response to special issues the court rendered judgment for plaintiffs in the sum of $2,226.25, with 6 per cent. interest from March 20, 1924.

The issues submitted and answers are as follows:

"Question No. 1: Do you find from the preponderance of the evidence that the plaintiff, the Fort Supply Company, and the persons composing that firm, before the time they be-

gan operating the cold storage plant involved in this case, had never had any experience in the construction or operation of a cold storage room such as has been described by the witnesses? Answer 'yes' or 'no.' Answer: Yes.

"Question No. 2: Do you find from the preponderance of the evidence that the defendant, Don Rathbun, informed the Fort Supply Company that he could and would, if they entered into a contract with him, build them a cold storage plant which would maintain a temperature of approximately 30 degrees Fahrenheit, when used for the purposes intended, by the operation of the machinery which was a part of it for a period of not exceeding 5 hours a day? Answer 'yes' or 'no.' Answer: Yes.

"Question No. 3: Do you find from the preponderance of the evidence that these statements (in question No. 2) if made by Don Rathbun to the plaintiffs, were believed and relied on by the plaintiffs? Answer 'yes' or 'no.' Answer: Yes.

"Question No. 4: Do you find from a preponderance of the evidence that these statements (in question No. 2), if made by Don Rathbun to the plaintiffs, induced the plaintiffs to enter into a contract with Don Rathbun for the building and installation of said storage plant? Answer 'yes' or 'no.' Answer: Yes.

"Question No. 5: Do you find from the evidence that the refrigeration plant in controversy was built and installed in substantial compliance with the written agreement and plan introduced in evidence before you? Answer 'yes' or 'no.' Answer: No.

"Question No. 6: Do you find from the evidence that the refrigerating plant in controversy was built and installed in substantial compliance with the written agreement and plan introduced in evidence before you with such changes or alterations as were agreed to by the plaintiffs and defendant during the course of its construction and installation, if any? Answer 'yes' or 'no.' Answer: Yes.

"Question No. 7: Do you find from the evidence that the refrigerating plant in controversy, if properly operated, would maintain an approximate temperature of 30 degrees Fahrenheit? Answer 'yes' or 'no.' Answer: No.

"Question No. 8: If you have answered that the plaintiffs had never had any experience in the construction or operation of such storage rooms, and that Don Rathbun did tell them that he could and would build them a cold storage plant described in question No. 2, and further find that these statements were believed and relied on by the plaintiffs, and induced them to enter into the agreement with Don Rathbun, then answer the following: (a) What is the present reasonable value to the plaintiffs of the plant they now control? (b) What, at the time of its completion, would have been the reasonable value of such a plant as called for in the contract if they were enabled to maintain an approximate temperature of 30 degrees Fahrenheit by the operation of the machinery of the same for 5 hours a day? (c) What would be the cost of so repairing or altering the existing plant as to place it in the condition in which the plaintiffs have alleged in their petition it should have been when completed, finished, and installed? Answer: (a) $1000. (b) $2,850. (c) $1,850.

"Question No. 9: Do you find from the preponderance of the evidence that the plaintiff has been compelled to spend any sum of money for additional water and power to operate said refrigerating plant on account of defective construction or defective machinery, if any, used in connection with said plant? Answer 'yes' or 'no,' and if you answer 'yes,' then state how much. Answer: Yes; $150.

"Question No. 10: Do you find from the preponderance of the evidence that the plaintiff lost any ice by melting during the operation of said plant as a retail ice house by reason of any defect in or improper construction of the plant or its machinery? Answer 'yes' or 'no,' and if you answer 'yes,' then state in money value how much. Answer: Yes; $226.25.

"Question No. 11: If you have found that the refrigerating plant was not substantially according to the representations made to the plaintiffs, or was not in substantial compliance with the contract and plan, subject to such changes, if any, as were agreed on between the parties during the course of its construction and installation, then, what do you find would be the reasonable cost of making any necessary repairs or additions to the plant so as to make the same substantially conform to the representations, contract and plan, with changes agreed on, if any? Answer: $1,850."

[1] It is contended that judgment should have been rendered in favor of appellant based upon the sixth finding to the effect that the refrigerating plant "was built and installed in substantial compliance with the written agreement and plan introduced in evidence during the course of its construction and installation." This is untenable in view of the findings made in response to issues 1, 2, 3, 4, and 7.

[2] It is objected to issue No. 1, that it "called for an evidentiary fact and was immaterial, and did not limit the finding or inquiry to the pleadings, but left the jury to the testimony solely." If it be conceded, which we do not, that the issue was as to an evidentiary matter and immaterial still this affords no ground for reversal in a case submitted upon special issues. It is treated as surplusage. As to the other objections, there could be no possible misapprehension on the part of the jury as to the cold storage room referred to, and the matter presents no error.

[3] A number of appellant's assignments and propositions relate to the proper measure of damage in the case. He contends that the proper measure is the rule applied in Nunn v. Brillhart, 242 S. W. 459, by the Amarillo Court of Civil Appeals. In that case, Simpson & Company contracted with Brillhart to install a heating plant which was guaranteed to furnish a certain temperature, and supply two gallons of hot water per minute. Nunn was a surety upon the construction bond given by Simpson & Company, the bond being in the sum of $840. The contract price was $840, which was paid by Brillhart. The plant as installed did not fulfill the guaranty, and Brillhart expended $690 in remodeling the same, and making certain additions. He

claimed that the plant still failed to meet the requirements of the guaranty, and that it would cost $464 more to make it do so. Brillhart recovered of Simpson & Company and Nunn said sum of $690, and against Simpson & Company alone the further sum of $464. Nunn appealed. He claimed that the proper measure of damage was the difference between the value of the plant as installed and its value had it been installed so as to meet the conditions of the contract. The Court of Civil Appeals rejected this contention, and held that upon the facts of that case the trial court did not err in applying as the proper measure of damage the reasonable cost of remedying the defects in the plant so as to make it fulfill the guaranty. The case, however, was reversed on account of error in the admission of evidence, and the overruling of a special exception to the petition. Upon the authority of the ruling made by the Court of Civil Appeals upon the measure of damage in that case the appellant here insists that the same measure should be applied in the present action.

However, a writ of error was granted in Nunn v. Brillhart and the reversal of the case by the Court of Civil Appeals was sustained but upon another ground of alleged error which had been rejected by the Court of Civil Appeals. In stating the proper measure of damage to be applied upon retrial the commission of appeals said:

"The defendant in error was justified in concluding that the contractors had abandoned the contract. The defective system furnished by them was in place in his home. He could have had it removed and would have been within his rights. He chose, however, to let it remain and to use it as a basis for constructing an adequate heating plant. Such action on his part made him liable for the reasonable value of the same at the time as an offset to his demand for return of the purchase price. Gonzales College v. McHugh, 21 Tex. 257; Carroll v. Welch, 26 Tex. 147, 149. Upon the case made by the record the measure of defendant in error's recovery should be the purchase money paid by him, with legal interest from the date of payment, less a credit equal to the reasonable cash value of the system installed by the contractors at the time he used and appropriated the same. We recommend that the judgment of the Court of Civil Appeals, reversing and remanding the cause, be affirmed, but that the trial court be governed by this opinion on the subjects above discussed."

The appellees claim the present plant cannot be so repaired and added to so as to make it comply with the representations and guaranty made by appellee, and that upon such a state of facts the correct measure of damage is the difference between the market value of the plant as it should have been constructed and its market value as actually constructed. Assuming the facts to be as contended by the appellees the undisputed and admitted evidence further shows that they have retained and used and still retain and use the plant. Under such circumstances and the ruling by the commission of appeals in Nunn v. Brillhart, the proper measure of damage is the difference between the contract price of $2,850 which they have already paid, and the reasonable value of the plant at the time they accepted and appropriated it. According to Rathbun's evidence however, the present plant, at a cost of $200 or $300, may be remedied so as to fulfill his obligation, and, if this be true, such is the proper measure of damage to be applied upon retrial.

[4, 5] While Mr. Huthsteiner, a witness—

"was upon the stand testifying he was asked a question by counsel for the plaintiff to which objection was made by the counsel for the defendant on the ground that same was leading and suggestive, whereupon the court remarked: 'I am satisfied that you could not lead this witness,' at which the members of the jury laughed. Whereupon counsel for the defendant excepted to the remark of the court upon the ground that it was a comment upon the weight of the testimony, and that it was calculated to cause the jury to lend undue weight and importance to the testimony of said witness. Whereupon the court turned to the jury and said: 'Gentlemen, you will pay no attention to the remark which the court has just made.'"

The bill is thus qualified by the court:

"Attorneys for both sides had been talking 'across the table' and making side bar remarks, which the court had not interrupted as 'all were courteous and good natured. Attorneys for plaintiff had several times outlined hypothetical questions to this witness, which he had himself modified before answering, and the court thereupon made the remark set out when objection was made to an interrogatory as leading."

A copy of a letter dated October 20, 1923, written by plaintiffs' attorney to defendant was admitted over the objection "that it was a self-serving declaration written after the controversy arose, was not the best evidence, and no predicate had been laid for its introduction, and it was immaterial and irrelevant." The record does not show any predicate for the admission of the copy instead of the original. The letter reads:

"The Fort Supply Company has asked me to notify you that the refrigerator plant which you built for them at 3804 Pershing Drive, under contract of May 4, 1923, will be closed on November 1st, for alteration; if you are willing to make such alterations in the construction of the plant as will make it give the service guaranteed in the contract, they will be glad to have you do so."

One of the plaintiffs was permitted to testify to—

"statements made by Fallhaver, witness for the plaintiffs to defendant, Rathbun, while the work was in progress, that he had told him that mineral wool and broken cork were not as good

as cork board, and that it would be cheaper to put in ground cork rather than mineral wool, and that mineral wool would not be as good insulation as cork, and that he had better put in cork and avoid a lot of trouble sooner or later as there would be trouble with that mineral wool."

The statements were objected to upon the ground that they "were hearsay, were transactions and statements of a third party, were not material to any inquiry in this case." Error is also assigned to the action of the court in permitting—

"the plaintiff, Miller, over defendant's objection, to testify as to the market value of the plant and as to monetary depreciation of the plant and as to the difference in value in view of the fact that his testimony was based entirely upon hearsay, he having no idea or knowledge as to such values independent of the result of inquiries which he had made for the purpose of ascertaining same after the controversy arose. Such information and knowledge as he had being entirely the result of hearsay, the witness was not qualified to testify and the testimony should have been excluded, market value not being a criterion or measure in this case; the true measure being what it would reasonably cost to remedy any defect, if any, in the plant, or to place it in a proper condition for operation, if it was not in that condition when completed, so as to make it conform substantially to the contract and plan agreed upon and as modified by the parties during the course of construction."

Also, to the "testimony of the plaintiff, Miller, to the effect that he had inquired of contractors and engineers as to the cost of reconstructing or altering the plant, which was his sole source of information, and that he had estimates made by such parties, and from this information he knew what the cost of the plant would be was hearsay. The witness was not qualified to testify as to such values, and his testimony that such cost would be $2,500, was inadmissible."

The testimony of Mr. Miller discloses that his estimates as to values and cost of reconstruction of the refrigeration plant was based solely upon what he had been told by others in response to inquiries made by him. His opinion as to these matters was based upon this hearsay and he was thus not qualified. Echols Bros. v. Stevens (Tex. Civ. App.) 196 S. W. 365; Ry. Co. v. Jackson & Edwards, 99 Tex. 343; 89 S. W. 968; Ry. Co. v. Maddox, 75 Tex. 300, 12 S. W. 815; W. F. Express Co. v. Williams (Tex. Civ. App.) 71 S. W. 314; Ry. Co. v. Crowley, (Tex. Civ. App.) 86 S. W. 342; Ry. Co. v. Gunter, 39 Tex. Civ. App. 129, 86 S. W. 938.

It is undisputed that the contract price was $2,850, and that it has been paid. In view of this undisputed evidence and the answers of the jury to questions 11 and subdivision (a) and (c) of question 8, it would appear that it is immaterial which measure of damage be applied as the result is the same under either rule. But the findings that the value of the plant as installed is $1,000, and that it would cost $1,850 to repair and add to the same so as to comply with the contract, is evidently based in large measure, if indeed it be not supported, solely, by the incompetent evidence of the plaintiff Miller, and, therefore, its admission was reversible error.

As to the other evidence indicated above and complained of by appellant some of his objections in each instance were well taken and the same should have been excluded. Each of the matters complained of in that respect, and the remark of the court considered separately and alone, would probably be regarded as harmless error, but, considered as a whole, and the sharply conflicting evidence upon the controlling issues in the case, presents a situation such that, in our opinion, the error should not be treated as harmless.

There are some other assignments and propositions presented which we deem it unnecessary to discuss further than to say that they are either without merit or relate to some matter which should not arise upon retrial.

Reversed and remanded.