## SAFEWAY STORES, Inc., OF TEXAS v. BRIGANCE et al.

### No. 12357.

Court of Civil Appeals of Texas. Dallas.

June 4, 1938.

Rehearing Denied July 2, 1938.

Eckford & McMahon, of Dallas, for appellant.

Burford, Ryburn, Hincks & Charlton, Callaway & Reed, W. C. Scurry, and Frank C. Brooks, all of Dallas, and Tilley & Tocker, of Fort Worth, for appellees.

BOND, Chief Justice.

On May 17, 1935, appellee Lula Brigance was a passenger on a north-bound street car owned and operated by the Dallas Railway & Terminal Company; she was seated opposite the first window on the west side, immediately back of the motorman's vestibule, with her back to the window. An open door hinged to the back and extending three or four inches beyond the side of a truck owned and operated by Safeway Stores Inc. of Texas, crashed into the window of the street car where Mrs. Brigance was seated, shattering the glass and bending the iron window frame. Mrs. Brigance sustained personal injuries and brought this suit against Dallas Railway & Terminal Company, Safeway Stores Inc. of Texas, and the Western States Grocery Company.

The case was tried to a jury and, at the conclusion of the testimony, the court instructed a verdict in favor of the Railway Company and the Western States Grocery Company; and on findings of the jury on special issues the court entered judgment in favor of Mrs. Brigance against Safeway Stores Inc. of Texas for the sum of $7,500, and in favor of the Railway Company and the Western States Grocery Company. The Safeway Stores alone appealed.

The verdict of the jury is, to the effect, that the Safeway Stores was guilty of negligence, (1) in driving on the left-hand side of the street, (2) in attempting to drive the truck between the approaching street car and a truck double parked on the street, owned by Zanes Freight Agency, where there was not sufficient room to pass, (3) in failing to keep a proper lookout, (4) in failing to stop its truck before the collision, (5) in failing to steer its truck so as to avoid collision with the street car, and (6) that each of said acts of negligence was a proximate cause of plaintiff's injury, fixed at $7,500.

Appellant, in many ways and diffuse assignments, complains of the action of the trial court in instructing a verdict for the Railway Company. We deem it advisable to dispose of all assignments on a single point—that is, Did the court err in instructing a verdict for the Railway Company?

There is evidence that, at the scene of the accident, Zanes Freight Agency had a truck double parked on the west side of the street. When appellant's truck, going south, was passing the Zanes truck, the street car was then approaching from the opposite direction and on the east side of the street. Appellant's truck and the street car passed each other, but the protruding door on the back of the truck, about ten feet from the front end of the street car, crashed into the window. The street car, of course, was stationed on tracks laid in the street, and the tracks being straight, the overhanging of the street car remained the same; while appellant's truck was free to veer from its course, thus changing its relative position with the passing street car. There is evidence also that the operator of the street car accelerated its speed immediately before the collision; that he saw the truck approaching and its relative position to the street car track, and he saw the door protruding three or four inches from the side of the truck, and that he did not know or give any thought as to the amount of clearance between the truck and the street car.

Appellant alleged various acts of negligence on the part of the operator of the street car, supporting the above proof, and sought action for indemnity and contribution against the Railway Company. Appellant also presented in the trial of the case timely special issues as to proximate cause of the collision and resultant injury.

█ The rule is well settled that, it is error to instruct a verdict when there is evidence of probative force which will justify a finding in favor of any material issue. Stevens v. Karr, 119 Tex. 479, 33 S.W. 2d 725. So, we may well assume for the purposes here that appellant's pleading and evidence raise the issues of negligence on the part of the Railway Company, in respect to the speed of the street car and of the motorman's failure to stop and look; but with that assumption, the question arises as to whether or not any of such negligent acts was a proximate cause of the collision? Ordinarily, proximate cause arising from proven negligence is a question for determination by a jury, based upon a reasonable inference. City of Dallas v. Maxwell, Tex. Com.App., 248 S.W. 667, 27 A.L.R. 927; Franklin v. Houston Electric Co., Tex.Civ. App., 286 S.W. 578; Knecht v. Buckshorn, 233 Ky. 329, 25 S.W.2d 727. But, where there is no reasonable inference as to the causal connection of such negligence with the collision, there is no probative evidence of proximate cause upon which the jury could base a verdict; thus, the issue of proximate cause becomes a question of law.

█ In this case, the back end of the truck, after it passed between the street car and the double-parked vehicle, apparently in safety, came in contact with the side of the street car ten feet beyond the front thereof. The truck evidently ran into the street car due to the operation of the truck, not the operation of the street car, and had the operator of the truck continued his course, after passing the front ten feet of the street car, there would not have been a collision and resultant injury to Mrs. Brigance. Therefore, the speed of the street car played no part in the causation of appellant's injury; the same result would have occurred even had the street car been moving at a much slower rate of speed, or even standing still. Therefore, the proximate cause of the collision must have been the operation of appellant's truck, as the motorman of the street car could not reasonably have foreseen that a collision would occur after the truck had passed beyond his vision.

█ The principle that foreseeableness or anticipation is an essential element of proximate cause is clearly stated in City of Dallas v. Maxwell, Tex.Com.App., 248 S. W. 667, 670, 27 A.L.R. 927, reading:

"In this state it is now a settled doctrine that anticipation of consequences is a necessary element in determining not only whether a particular act or omission is actionably negligent, but also whether the injury complained of is proximately caused by such act or omission. Seale v. Railway Co., 65 Tex. 274, 57 Am.Rep. 602; Texas & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S.W. 162; Gulf, C. & S. F. Ry. Co. v. Bennett, 110 Tex. [262] 270, 219 S.W. 197; San Antonio & A. P. Ry. Co. v. Behne (Tex. Com.App.) 231 S.W. 354. This doctrine is the result of an effort by the courts to avoid as far as possible the metaphysical and philosophical niceties in the age-old discussion of causation, and to lay down a rule of general application which will, as nearly as may be done by a general rule, apply a practical test, the test of common experience, to human conduct when determining legal rights and legal liability. Actual anticipation is of course not in any sense the test; but what one should under the circumstan-

ces reasonably anticipate as consequences of his conduct".

In the instant case, we fail to see how the motorman of the street car could reasonably have anticipated or foreseen that the approaching truck, which had ample room to pass between the street car and the Zanes truck, and did actually pass in safety the front ten feet of the street car, would change its course of travel and effect a crash with the side of the street car. The motorman seeing the approaching truck and the protruding door from its side, and knowing that the street car could only travel on stationary tracks and the truck could freely travel, we think that neither the speed of the street car nor his failure to stop and look, under such circumstances, raise a reasonable inference of proximate cause for determination of the jury, and that the trial court did not err in giving the instructed verdict. All assignments relating to this question are overruled.

■■ The record shows that, immediately after the accident, the motorman took the names and tabulated a list of all the passengers of the street car and all persons who witnessed the collision; on the trial of the cause mention was made that the Railway Company had such list of witnesses and that only the motorman and truck driver were used as witnesses to the facts surrounding the collision. The attorneys for the Railway Company and Safeway Stores occupied stations near each other at the counsel table and freely confided relative to the trial of the cause. On motion for rehearing, it was shown that statements were made in the jury room during the deliberation that the Railway Company and the Safeway Stores would probably divide the damages, or whatever amount may be awarded by the jury.

Appellant assigns error on the action of the trial court in failing to grant a new trial, based on the argument of counsel for Mrs. Brigance in his closing speech to the jury, in which he said:

"Did you see how Mr. Charlton (attorney for Railway Company) and Mr. McMahon (attorney for Safeway Stores) got on the same side of the table and worked together in this suit? Did you see paper after paper that McMahon turned to; did you see the thoroughness with which he had investigated everything that happened to this lady; did you see all of that—did you see Mr. Charlton or Mr. McMahon, either one pro-

duce any witnesses to this accident, although they had available a list of witnesses taken from fifty-five passengers, both Mr. Charlton's representatives and Mr. McMahon's representatives were at the scene of the accident when this lady was being carried to the ambulance, did they bring one single witness about how this happened, except the one man they put on when the case was being closed? I brought the only witness here that saw the accident, my client couldn't tell you anything about it. Mr. McMahon (at this point counsel for plaintiff turned to this defendant's counsel): if you were so anxious to bring everything before the jury, do you tell me that you and Mr. Charlton could not have taken that list and have brought any one of them to tell how this accident happened—no, the reason the testimony was not had was because it was the only way they could try this suit, because it was negligence and the lady was hurt, and the only way in the world was for them to take the position that she was either a faker or mentally unbalanced".

It can hardly be said that this argument was proper: The inference to be drawn from the statement is, that the Railway Company and the Safeway Stores were working together, that they had witnesses and held back testimony which should have been produced. There is nothing in the record showing or tending to show that appellant, its agents or representatives, had available any witness other than the operator of its truck, or that it took the names of the passengers and witnesses to the collision, or that the Safeway Stores was working with the Railway Company to suppress evidence. The Railway Company having been eliminated from the argument, whatever it may have done to prejudice the rights of the plaintiff became immaterial, and to argue its failure to produce witnesses who may have been known to its agents and representatives, and to connect therewith the Safeway Stores, without a suggestion of evidence to support it, undoubtedly, such argument was calculated to injure and perhaps did, as reflected in the discussion of the question by the jury that "the Street Car Company and the Grocery Company would probably divide the damages or whatever amount may be awarded by the jury". The argument being improper, calculated to prejudice the rights of appellant in the amount of the award, injury is presumed.

In Robbins v. Wynne, 44 S.W.2d 946, opinion by the Commission of Appeals, ap-

proved by the Supreme Court, the court said (page 947):

"When, as in a case like this, the improper argument and circumstances surrounding it are undisputed, we think the issue of injury is purely a law question. We think, further, that when counsel goes outside the record and gives the jury information that is calculated to injure the other side, it is misconduct which must result in a reversal, unless it clearly and affirmatively appears that no injury has been done. In other words, we hold that the same rule governs in such instances as governs where the jury itself is guilty of misconduct and hears evidence outside the record while it is deliberating on a verdict [citing authorities]."

We do not think that, in all cases where improper argument is indulged in, a reversal of the case follows, or that injury results, but in a case like this, where one of the parties was eliminated and the issues as to the extent and nature of plaintiff's injury are sharply drawn, and the amount of the verdict is challenged as being out of proportion to the damage Mrs. Brigance sustained, it cannot be said that the question of injury, from the improper argument, is free from doubt, or that the appellate courts are bound by the discretion of the trial court in overruling appellant's motion for a new trial.

■ The record reveals that Mrs. Brigance has been involved in several different accidents, resulting in suits for damages and claims of injury: In 1914, she brought suit against Neiman-Marcus Company of Dallas, for injuries resulting from a light cord coming in contact with a ceiling fan, causing an electrical display in a room where Mrs. Brigance was working, frightening her, thus causing her to fall over a chair, for which she received $1,500 in compromise of her damages; again in 1925, while in the act of getting off of a street car, Mrs. Brigance stepped on an alleged defective platform or step, falling to the ground, injuring her knee, for which she brought suit against the Railway Company, compromising her damage for $100; and still again, in 1933, while a passenger on a street car, the car collided with a moving van, Mrs. Brigance was frightened and shocked, resulting in suit and compromise of her damage for $150. In the suit of 1933, Mrs. Brigance alleged that, "as a direct and proximate result of negligence on the part of each of the defendants, this plaintiff was thrown violently against the rear of the seat on which she was sitting as a passenger on said street car, striking her back, arm and shoulders with great force against the back of said seat, injuring her spine, spinal column and bruising and lacerating the muscles and nerves in her back and wrenching the same and shocking and injuring her entire nervous system and rendering her unconscious; that the operator of said street car at said time called a taxi-cab, took her in an unconscious condition from said street car, and sent her to the office of a physician in said City of Dallas, and that she was in an unconscious condition for a period of approximately one hour * * *."

In the present suit, there is objective evidence of injury to Mrs. Brigance—that is, injury perceptible to an observer, a scalp wound about one and one-half to two inches in length on the top of her head, and bruises on her back and shoulders; she received no broken bones or muscles, or flesh lacerated or torn. From a layman's viewpoint, she was apparently unconscious and remained in an unconscious condition for about an hour. The objective evidence of injury, from her physician's testimony, is that she suffered traumatic neuritis, affecting her entire nervous system, which is permanent and will cause considerable pain and suffering for the remainder of her life.

During the trial of the case, appellant contended that the plaintiff's injury was superficial, that she was feigning, actuated by bad faith, touching the credibility and weight to be given her testimony. Appellant introduced in evidence the testimony of Mrs. M. E. McHamm, who testified as follows:

"Q. Mrs. McHamm, did Mrs. Brigance ever mention to you any previous claims or law suits she had had? A. Yes. I have heard her speak of some.

"Q. In connection with that conversation, I'll ask you whether or not she ever told you that, if she ever got a chance she would like to sue somebody for a big settlement? * * * A. Well, she just said in a way, just insinuated if she ever had a chance—.

"Q. Just tell the jury as near as you can what she said. A. Well, she just said if she had a chance she would like—she said she felt like she ought to have gotten more money out of the case than she had, but she didn't and if she ever had another chance she would".

Appellant assigns error to the action of the court in sustaining appellee's objection to the proffered testimony of Mrs. Maude

Green, who, had she been permitted, would have testified as follows:

"Q. Did you ever hear Mrs. Brigance make any statement to the effect that she would like to stick somebody and take it easy? A. I don't know about that easy— (objection).

"The Court: The court sustained the objection on the ground of its immateriality".

Had the witness been permitted to answer, she would have stated: "I heard her say she would like to stick somebody, not the easy part; she said that if she could get a chance, but she was just kidding, probably".

We think the proffered testimony of Mrs. Green admissible, as bearing on the nature and extent of Mrs. Brigance's injury, the numerous suits filed, and the small sums she had theretofore received. The jury was entitled to know that, prior to the accident involved here, Mrs. Brigance had made such statement, not only to one witness, but to another. The testimony that Mrs. Brigance said she would like to "stick some one" if she ever had another chance bears materially on the motive prompting Mrs. Brigance in pressing her claim for permanent injury, and the weight to be given her testimony as to the subjective symptoms on which her physician based his evidence of permanent injury.

Dr. Charles Warren, witness offered by Mrs. Brigance, testified that she sustained a laceration of about two inches on her head, had bruises on her back and shoulders; was nervous and complained of pain in her neck and shoulders; X-ray pictures revealed no fracture, spinal puncture negative. This doctor expressed the opinion that she had traumatic neuritis, probably a considerable amount of restraint in the use of her right hand. At the time of the collision, Mrs. Brigance was 55 years of age, and earning $15 a week. She was in a hospital about a month and thereafter at Mineral Wells, Texas, taking treatment for neuritis. She felt numbness in her arms at times, and often recurring pains.

In the light of the testimony and the amount of the judgment entered against appellant, we are unable to say that no injury was done by the trial court in refusing to admit the proffered testimony of Mrs. Green, and we think the comment made by the trial court that such testimony was immaterial aggravated the error and was calculated to prejudice the rights of appellant in its testimony, and the theory on which it was offered.

Many other trial errors appear in this prolix record and are properly presented and reviewed; they are not of sufficient importance, however, to reverse the case, and on another trial will likely not occur; they are overruled. From our conclusion of the record, as above expressed, the judgment of the court below should be affirmed as affecting the Dallas Railway & Terminal Company and Western States Grocery Company; and reversed and remanded as to the appellant, Safeway Stores Inc. of Texas; and it is so ordered.

Affirmed in part; reversed and remanded in part.