**EL PASO CITY LINES, Inc., v. PRIETO.**
No. 4427.

Court of Civil Appeals of Texas. El Paso.
July 12, 1945.

Rehearing Denied Aug. 2, 1945.

Brown & Brooke, of El Paso, for appellant.

Fred C. Knollenberg and Holvey Williams, both of El Paso, for appellee.

McGILL, Justice.

Appellee, Paul Prieto, sued appellant, El Paso City Lines, Inc., and R. B. North, to recover damages for personal injuries suffered by appellee's wife while she was a passenger on one of appellant's buses. The

injuries resulted from a collision between the bus and an automobile driven by North, which occurred on August 26, 1944, at the intersection of Yandell Boulevard and Campbell Street in the City of El Paso, Texas. Trial was to a jury and, based on answers to special issues, judgment for $2500 was entered for appellee against both appellant and North. North has not appealed.

Yandell Boulevard and Campbell Street are each approximately fifty feet in width between their respective curbs. Yandell Boulevard runs east and west and is intersected at an approximate right angle by Campbell Street, which runs north and south. Appellant's bus travelling in a westerly direction on Yandell Boulevard entered the intersection from the east and was struck by North's automobile which was travelling in a southerly direction on Campbell Street and entered the intersection from the north. The automobile struck the bus near its rear end. The point of impact was a little to the east of the center line of Campbell Street and about fifteen feet south of the north curb line of Yandell Boulevard.

Findings, which form the basis of the judgment against appellant, El Paso City Lines, are: (2) As the bus of the defendant, El Paso City Lines, approached the intersection of Yandell Boulevard and Campbell Street, it should have been reasonably apparent to the operator of the bus in the exercise of a high degree of care that defendant, R. B. North, was approaching such intersection from the right within such distance as to reasonably indicate a danger of collision; (3) a very cautious, prudent and competent person operating the bus as it approached the intersection would have yielded the right of way to North; (4) failure on the part of the bus operator to yield the right of way to North was a proximate cause of the collision; (7) just prior to the collision, the bus driver failed to keep such lookout for other vehicles as a very cautious, prudent and competent person would have kept under the same or similar circumstances; (8) such failure was a proximate cause of the collision; (17) the act of North in driving his automobile along Campbell Street into the intersection of Yandell Boulevard was not the sole proximate cause of the collision.

Question No. 1 inquiring whether as the bus approached the intersection it was reasonably apparent to the operator that R. B. North was approaching such intersection from the right within such distance as to reasonably indicate a danger of collision was answered in the negative.

Findings on which the judgment against R. B. North is based are: (11) Just prior to the collision, North failed to keep such lookout for other vehicles as a person of ordinary prudence would have kept under the same or similar circumstances; (12) such failure was a proximate cause of the collision; (13) the bus of the El Paso City Lines entered the intersection of Campbell Street before the defendant R. B North's automobile entered said intersection; (15) failure of the defendant North to yield the right of way to the bus driver was a proximate cause of the collision; (16) the act of the bus operator in driving the bus along Yandell Boulevard into the intersection of Campbell Street was not the sole proximate cause of the collision.

The amount of damages was fixed at $2500.

An ordinance of the City of El Paso was introduced in evidence. It provides:

"Section 20. Vehicles Approaching or Entering Intersection. A. The driver of a vehicle approaching an intersection shall yield the right-of-way to a vehicle which already has entered the intersection from a different highway." And provides a penalty for violation thereof.

■ Appellant presents points to the effect that the acts of negligence found against it were remote and the negligence of North in entering the intersection in violation of the city ordinance and in not yielding the right of way to the bus were "the last and direct" acts producing the collision and the "last and direct" cause thereof and of the resulting injuries to appellee; that any act of the bus driver in connection with the accident was remote and had no causal connection therewith, the connection being broken by such new intervening independent acts of North. We overrule these points. The substance of the above findings is that the failure of the bus driver to keep a lookout for other vehicles just prior to the collision and his failure to yield the right of way to North was negligence which was a proximate cause of the collision and that North's failure to keep a lookout for other vehicles just prior to the collision and his failure to yield the right of way to the bus driver in violation of the city ordinance, the bus

having entered the intersection before his automobile entered it, was negligence and a proximate cause of the collision.

█ That portion of the charge defining "proximate cause" specifies that a cause to be a proximate cause must be "unbroken by any new intervening and independent cause." Appellant did not plead any new intervening and independent cause as a defense nor request any issue thereon. Implicit in the findings on proximate cause, as defined by the court, and on sole proximate cause, is the exclusion of any new intervening and independent cause. If any issue of new intervening and independent cause was raised by the evidence, such issue was determined adversely to appellant by the above findings. The evidence was ample to sustain the findings that both the negligence of the bus driver and North proximately caused the accident. An act of negligence may be the proximate cause of injury, although it is not the nearest or last cause in a connected succession of events which lead to a result. Texas & P. R. Co. v. Bigham, 90 Tex. 223, 38 S.W. 162; Phoenix Refining Co. v. Tips, 125 Tex. 69, 81 S.W.2d 60; 30 Tex.Jur. Page 710, Sec. 55.

█ The bus driver's negligence in failing to keep a lookout for other vehicles may have been a proximate cause of the collision even though such negligence occurred prior to North's negligence in failing to yield the right of way to the bus which had already entered the intersection in violation of the city ordinance, just as North's negligence in failing to keep a lookout for other vehicles may have been a proximate cause of the collision, even though such negligence occurred prior to the bus driver's negligence in failing to yield the right of way to North. The fallacy of the proposition that the causal connection between the negligent failure of either the bus driver or North to keep a lookout and the collision is broken by the mere intervention of the other's failure to keep a lookout which was a proximate cause of the collision is apparent. Such a proposition would defeat recovery in every case where the negligent failure to keep a lookout of one party to a collision occurred subsequent to the negligent failure of the other party to keep such lookout, if such latter failure were a proximate cause of the collision. It would recognize only one proximate cause of the collision and that "the nearest and last cause in a connected succession of events which leads" to it. That such is not the law is elementary and is demonstrated by the above cited authorities. For like reason, the bus driver's negligence in failing to yield the right of way to North may have been a proximate cause of the collision even though such negligence occurred prior to North's negligence in failing to yield the right of way to the bus driver. The fact that under the city ordinance the bus driver had the right of way did not relieve him from his negligence in failing to keep a lookout or in failing to yield the right of way to North, when he should have discovered that North was not going to yield the right of way to him. Lewis v. Martin, Tex.Civ. App., 120 S.W.2d 910 (W.R.); American Grocery Co. v. Abraham, Tex.Civ.App., 94 S.W.2d 1231 (W.D.).

█ The findings that both the bus driver and North were negligent in the several respects indicated, and that such negligence of each was a proximate cause of the collision are tantamount to findings that the negligence of each was a concurring proximate cause of the accident which resulted in the injuries to appellee's wife and foreclose the question.

█ Appellant's remaining points complain of the court's failure to grant it a new trial because of improper argument of plaintiff's counsel and because the verdict was excessive. Mr. Knollenberg, one of plaintiff's counsel, in his opening argument said:

"Suppose you were to have headaches all your life. Suppose you were on there."

The court stated that it was highly improper for counsel to suggest to the jury that they place themselves in the situation of the injured party and instructed the jury not to consider the remark for any purpose. Such remark was obviously a direct appeal to the jury to consider the case from an improper viewpoint, i. e. to put themselves in the plaintiff's place and answer the issues submitted to them in her favor, if they would want her to answer such issues in their favor if their positions were reversed and she was on the jury and the members of the jury were plaintiff in the case. This sort of appeal was condemned in Fambrough v. Wagley, 140 Tex. 577, 169 S.W. 2d 478. It is stated in the opinion in that case that such argument is not of such a nature that its harmful effect could not

have been removed by proper instruction. Such instruction was given here.

■ During the closing argument, Mr. Williams, another of plaintiff's counsel, said:

"I have been here a considerable length of time and I have never seen any bus yield the right of way to anyone."

On objection, the court instructed the jury that such statement was highly improper and that they should disregard it entirely, that counsel was not a witness in the case. Obviously, such statement was highly improper. We think, however, it was not so inflammatory that its harmful effect could not be and was not removed by the court's instruction which was promptly given. Appellant makes no contention that the evidence was insufficient to sustain the finding to effect that the failure of the bus driver to yield the right of way to North was negligence.

■ Mr. Williams also stated:

"Their own witness, Mrs. Sanchez, who was standing there, holding on to the rail, and talking to him * * *" (referring to Puckett, the bus driver.)

Whereupon, Mr. Brown, appellant's attorney, stated:

"There is absolutely no evidence that Mrs. Sanchez was standing there talking to him."

The court thereupon instructed the jury that unless they recalled testimony from the witness to that effect, they would disregard the statement as coming from counsel. Mr. Williams then stated that he felt there was such testimony, that the record would bear him out. The court instructed him to proceed. Appellant's counsel did not object to the manner or form of the court's instruction. His statement that there was no evidence that Mrs. Sanchez was talking to the bus driver is borne out by the record. The instruction no doubt would have been more effective had the court recalled the testimony and instructed the jury that there was no such evidence and that they should disregard the statement of counsel. Appellant was entitled to such instruction and refusal of the court to give it after proper request would have constituted reversible error. However, the instruction given required the jury to determine from the evidence whether there was such testimony as a basis for their consideration of plaintiff's counsel's state-

ment. We think the instruction as given, in the absence of objection to its manner and form, was sufficient to remove any harmful effect that might have been created by the erroneous statement. The conduct of appellant's counsel in the premises indicated the court's handling of the matter was satisfactory to him.

When the court instructed Mr. Williams to proceed, the following occurred:

"Mr. Williams: All right, I am going to. * * * I call your attention to the fact that there were at least 35 people on that bus whose names they have. * * *

"Mr. Brown: We object to that. It is contrary to the evidence.

"The Court: You must recall what the evidence is in that respect for yourselves, and any statements made by counsel are not evidence and do not supply a want of evidence in the record. You must recall for yourselves what the evidence is in that respect.

"Mr. Brown: There is no evidence that we have the names of 35 people, and, furthermore, there is no evidence to show that any of the people whose names we don't have, or the names of those whom we didn't produce here, are in position to testify with reference to the facts.

"The Court: Gentlemen, you must recall for yourselves what the evidence is in this respect, and unless there is such evidence you must disregard the statement of counsel.

"Mr. Williams: I want to make my argument and will take the responsibility for it.

* * * * *

"Mr. Williams: I say to you that under this evidence it shows there were at least 35 people on that bus and several got away and Tipton admitted he had more cards in his office than the 17 he had here, and I say to you that surely from a practicable standpoint some of those must have been men, from a practicable common sense a man is more used to pass on such things as this, and I haven't seen them here. Any objections?

"Mr. Brown: We except to that, if the Court please.

"Mr. Williams: * * * I just say good substantial business men are used to conducting affairs of judging speed and would be a whole lot better witnesses in this kind of proposition than these lovely

ladies would be and I venture to guess out of 35 people they could have found some good substantial man if they had tried to.

"Mr. Brown: We object to that."

At the close of the argument, the court instructed the jury that there was no duty on the part of defendant, El Paso City Lines, to call passengers on its bus as witnesses and its failure to produce such passengers should not be considered for any purpose and they should disregard the argument of plaintiff's counsel which sought to create an impression that such matters should be considered by them against the defendant, El Paso City Lines. The court qualified appellant's bill of exception by stating that the argument of plaintiff's counsel, Williams, in so far as it related to the production of or the failure to produce passengers on the bus of defendant, El Paso City Lines, as witnesses, was an obvious effort on the part of plaintiff's counsel to reply to the argument of counsel for defendant, El Paso City Lines, on this issue to effect that the evidence established that in addition to the passengers who testified as witnesses for defendant, it had the statements of some other witnesses whose absence was fully accounted for and it did not have the statements from other passengers whose names it had and that it did not have the names of all the passengers riding on its bus on the occasion in question.

■ There was no evidence that appellant had the names of thirty-five people who were on the bus at the time of the accident. The bus driver testified that he did not know how many people were on the bus, that he did not get the names of all the passengers, that some of them got away, that he gave appellant the names of all he did get. Mr. J. Tipton, head of appellant's claim department, testified that the operator's report showed that there were thirty-five passengers on the bus, that the names of seventeen of them were turned in, that he was unable to say whether any more names were turned in, that he had not been able to locate some witnesses whose names had been turned in, that appellant was unable to locate four or five whom it had statements from because they had moved away. All this testimony was admitted without objection. Again appellant's counsel did not object to the manner or form of the court's instructions. The objection was that the statement was contrary to the evidence, which it was. The court's refusal on proper request to have unqualifiedly instructed the jury not to consider it would have constituted error. The instructions given required the jury to determine from the evidence whether the statement found support in the record before they could consider it and were sufficient to remove any harmful effect it may have had.

■ Both the argument of Williams to the effect that some of the people on the bus must have been men who from a practical standpoint were more used to pass on such things whom he had not seen at the trial and his remark (apparently addressed to appellant's counsel): "Any objections?" were improper. The only reasonable inference from the argument was that there were men on the bus "more used to pass on such things as this" whom appellant could and would have produced had their testimony been favorable to it. The subsequent argument referred to such men as "good substantial business men * * * used to conducting affairs of judging speed (who) would be a whole lot better witnesses in this kind of proposition than these lovely ladies would be." There was no evidence that any of the thirty-five passengers were men better qualified to testify than the witnesses who did testify or that their testimony was available. Inferences as to such facts would have to be indulged to warrant the further inference that such testimony would have been adverse to appellant.

Proctor v. Cisco & N. E. R. Co., Tex. Com.App., 277 S.W. 1047. What the other passengers on the bus might have sworn to was mere conjecture and not a subject for legitimate comment. Metropolitan St. R. Co. v. Roberts, Tex.Civ.App., 142 S.W. 44; Lottman v. Cuilla, Tex.Com.App., 288 S.W. 123; Morgan v. Maunders, Tex.Civ. App., 37 S.W.2d 791 (W.D.); San Antonio Public Service Co. v. Smith, Tex.Civ. App., 57 S.W.2d 179 (W.D.); Safeway Stores, Inc. v. Brigance, Tex.Civ.App., 118 S.W.2d 812 (W.D.); Southern Underwriters v. Dykes, Tex.Civ.App., 145 S.W.2d 1105. The inference from the remark "Any objections?" addressed to appellant's counsel is inescapable, that the objection theretofore made by such counsel relative to the statement that appellant had the names of thirty-five witnesses was groundless. It was an indirect appeal to the jury to consider the objection as evidence

against the party making it and was prejudicial. Metropolitan Str. Ry. Co. v. Roberts, supra. Appellant's counsel did not specify the ground of his objections to the argument or the remark nor did he press his exception to the point of procuring a ruling thereon. Appellant therefore waived the objectionable character of the argument and remark above indicated. Ft. Worth & R. G. Ry. Co. v. Bryant, Tex. Civ.App., 210 S.W. 556 (W.R.); Holt v. Collins, Tex.Civ.App., 131 S.W.2d 813 (W. D.); 41 Tex.Jur. Pages 825 and 826, Sec. 90. Also, affirmative error is not shown in the court's failure to rule on the objections since no ruling thereon was specifically invoked. Texas Compensation Ins. Co. v. Ellison, Tex.Civ.App., 71 S.W.2d 309, loc. cit. 314 (W.D.); Tex.Jur., supra.

Unless the argument and remark were so prejudicial or inflammatory that no instruction from the court would have cured the error, appellant waived such error by its failure to interpose objections ◆hereto, specifically pointing out to the court the grounds of error on which it now relies. Ramirez v. Acker, 134 Tex. 647, 138 S.W. 2d 1054.

We have concluded that the error could have been cured by proper instruction; also that the instruction given at the close of the argument did cure its harmful effect, especially in view of the court's qualification of the bill to effect that the argument was invited. We have also concluded from an examination of the entire record that no reversible error is shown by the bill of exception. We disapprove the argument and conduct of appellee's counsel as reflected by the bill. In reaching our conclusion, we are not unmindful of the numerous decisions of the Supreme Court holding that verdicts procured by improper argument will not be permitted to stand nor have we overlooked the rule enunciated in Bell v. Blackwell, Tex.Com.App., 283 S.W. 765, and adhered to in a long line of decisions as recent as American Employers' Ins. Co. v. Kellum, 185 S.W.2d 113 (W.R.), to effect that when improper argument has been made, the adverse complaining party is entitled to a reversal of the judgment as a matter of law if under all the circumstances there is any reasonable doubt of its harmful effect or unless it affirmatively appears no prejudice resulted; nor the rule laid down by this court in Rathburn v. Miller, Tex.Civ.App., 266 S.W. 818, cited by appellant and sanctioned by the Supreme

Court in Smerke v. Office Equipment Co., 138 Tex. 236, 158 S.W.2d 302, and Sproles Motor Freight Lines v. Long, 140 Tex. 494, 168 S.W.2d 642, that while each of the matters complained of considered separately might be regarded as harmless error, yet when considered as a whole, they should not be treated as harmless; in other words where the record shows a number of instances of improper argument, no one instance being sufficient to call for a reversal, yet all the instances taken together may do so.

In our opinion, the verdict was not excessive. We have carefully considered all the evidence on this point. To set it all out would unduly prolong this opinion, already too long. Suffice it to say that the evidence was sufficient to show that appellee was a woman forty years of age, healthy, employed as an operator of a bookkeeping machine and able to do work around her house at the time of the accident; that as a result of the accident, she received bruises on the left side of her head about her ear, suffered severe headaches for a long time, and had trouble in rotating her arms and pain in her back and shoulder and could not lift anything heavy at the time of the trial (February 20, 1945); that she had changed her job because the pain in her back prevented her from operating the bookkeeping machine and she could not lift heavy objects or work around the house since the accident. While there was medical testimony to effect that the x-ray showed no broken bones or injury to the ribs, it also was to effect that there might be an injury where the cartilage and ribs unite, which the x-ray would not show and that examination showed rigidity of the muscles of the neck; that the cartilage at the point of the left lung was bent and injured; that she may get over her symptoms soon or may not. In view of all the testimony, in a light most favorable to appellee, we cannot say that the verdict was the result of passion, prejudice or other improper motive, 13 Tex.Jur. Page 265, Sec. 150; or without support in the record. Texas Motor Coaches v. McKinney, Tex.Civ.App., 186 S.W.2d 714.

Finding no reversible error, the judgment is affirmed.

### On Rehearing.

In the Trial Court, neither party questioned the validity of the ordinance of the

City of El Paso referred to in our original opinion. They have not raised any point as to its validity on this appeal. Nothing that we have said in our original opinion or here should be construed as a holding that the ordinance referred to is or is not invalid. That question is not before us on this appeal and we have not passed on it.