### UNITED GAS PIPE LINE CO. v. SMITH et al.

### No. 6421.

Court of Civil Appeals of Texas. Texarkana.

July 27, 1950.

Rehearing Denied Oct. 5, 1950.

Vinson, Elkins, Weems & Francis, Thomas Fletcher, all of Houston, Long & Strong, Carthage, for appellant.

Jones, Jones & Brian, Marshall; Clifford S. Roe, Carthage, for appellees.

WILLIAMS, Justice.

Because of the disposition of certain points discussed in this court's former opinion reported in 222 S.W.2d 310, we preter-

mitted disposition of other assignments presented by United. The Supreme Court in an opinion on the same case styled Smith et al. v. United Gas Pipe Line Company, reported in 228 S.W.2d 139, has remanded the cause to this court for our consideration of these other assignments. The nature of this litigation and the procedure had in the trial court are duly reflected, without being again detailed, in above opinions. The litigants will be referred to as in our former opinion.

United has grouped points 3 to 10, both inclusive, and here asserts the matter raised in each constituted reversible error, and as a whole presents a cumulative reversible error.

The jury in response to special issue No. 1 sustained movants' allegations that Mrs. Elizabeth C. Smith did not have actual notice of the pendency of this suit prior to November 19, 1946; and a similar finding on special issue No. 2, that her husband did not have such notice. The original judgment was entered October 4, 1946. The sale of the properties as reported by the receiver was confirmed on October 29, 1946, and his final account was approved and he, as such receiver, was discharged November 19, 1946.

United and movants, who had been in contact with each other concerning a sale of her interest, had never been able to make a deal at the time United filed its petition in July, 1945. After this date and prior to date of the judgment she, according to her testimony, attempted to subscribe to a Panola County newspaper but never received an answer. She said she did this because United had told her a division of the property or a sale could be obtained through court, and she wanted the paper so she would know when and if such a suit was filed. She lived in Dallas, off and on during the period. Officers were never successful in obtaining personal service, but a nephew, an heir, was served there. A Mrs. Brodie lived in the dwelling on the acre tract and remitted to movants from time to time a small rental for its use. Mrs. Smith was back in Panola County in February, 1946, when they buried her mother, and at the time visited Mrs. Brodie. Mrs. Smith testified that the first information she or her husband received about any suit was in October, 1947, when Mrs. Brodie wrote her and enclosed a letter from United which was demanding possession of the property. She further testified that when her nephew was personally served with a citation in June, 1946, that she was in Norfolk, Virginia, having gone there in May, 1946, and not returning until February, 1947. Her husband, a marine engineer, was on the sea for years. When he returned to the states from time to time, she met him in various ports. Her testimony reflects that she traveled a great deal and visited various cities. It appears that her husband was in a hospital in May, 1946. When the legal test, that is, viewing above facts and circumstances in the most favorable light in support of a jury's finding we are unable to agree with appellant's position that the evidence is insufficient to support the findings to special issues Nos. 1 and 2. The circumstances offered in impeaching her denials of any notice went to her credibility as a witness, a matter to be weighed by the jury.

Special issue No. 3, answered "Yes," by the jury, reads: "Do you find from a preponderance of the evidence that the mineral royalty interest under all the property here involved was capable of fair and equitable division in kind among the owners of same, in the interest owned by each during October and November, 1946." United objected and excepted to the submission of this issue on the ground (1) that there was no pleading to support it; and (2) that there is no such thing as a "mineral royalty interest."

Litigants recognize that the two tracts were under a valid unitized oil and gas lease held by the Humble Oil & Refining Company and stipulated that no question of partition of partition of this 7/8 leasehold estate is or ever was involved in the suit. Movants' pleadings related to the minerals subject to the oil lease, and the alleged wrongful or unnecessary sale that was had under the original proceedings in that same was subject to partition. It is

thought that the pleadings were sufficient to raise the issue submitted.

■ The use of the term "mineral royalty interest" in special issue No. 3, if technically incorrect, sufficiently directed the inquiry whether or not the mineral interests subject to the leasehold estate, then owned respectively by the parties, was capable of a fair and equitable division. The oil and gas lease held by Humble and recognized by all parties as a valid and subsisting leasehold estate was introduced in evidence. Evidence was introduced which dealt with the rights of mineral owners in the unitized lease held by Humble.

■ The evidence with respect to the susceptibility of a fair and equitable partition of the surface on the 20-acre tract was sharply contested and much evidence could be pointed out from the physical characteristics of the land, a small swamp and access to a road that this surface was incapable of such a partition. The witnesses, Mrs. Smith in her own behalf, Hull, a surveyor, and Mrs. Brodie, a tenant on the place, were permitted over objections of United to testify that in their opinion this 20-acre surface could be fairly and equitably divided between the litigants as their interests existed in November, 1946. Hull's testimony dealt in great detail with respect to the physical characteristics, the area of the swamp, drainage and the accessibility to the only road which touched the land. In a much more general way Mrs. Smith and Mrs. Brodie gave their picture of these physical characteristics. After having related what they knew in the way above stated, each was permitted to express the respective conclusion that this 20-acre surface was capable of a fair and equitable division. In our judgment, the conclusions expressed amounted in substance to no more than a shorthand rendition of the facts they had detailed to the jury. The complaint urged to the inadmissibility of such conclusions that same involved a question of law, solely for the court to determine, is respectfully overruled, based on the holding in Burton v. Williams, Tex.Civ. App., 195 S.W.2d 245, 246. See also Federal Underwriters Exchange v. Cost, 132

Tex. 299, 123 S.W.2d 332, 335, 336; 19 Tex. Jur., pp. 99-100.

In support of the allegations that the $800 realized from the receiver's sale, of the surface and dwelling on the acre tract was grossly inadequate at the time of such sale in October, 1946, movants offered four witnesses on value. United insists here, as timely urged in the trial court, that they were not qualified to express an opinion of the value as it was shown they did not have knowledge of the values at the time and place and had not participated in the sales, purchases or offers of similar property in the neighborhood sufficient to enable any of them to draw a proper or dependable conclusion.

Each was familiar with the land in controversy and had casually inspected the house. Donald, Carswell and Heaton, natives of Panola County, had resided in or near Carthage for many years. Patterson, the other witness had been engaged in the insurance and real estate business in Carthage since 1945. The property in controversy is located on the Gary road about a mile from Carthage. They had handled no sales, knew of no sales and did not know of any offers for any real estate in the area or neighborhood where the land was situated. But each testified that he was familiar with sales of realty in and around and the same approximate distance from Carthage and of comparable desirability with respect to distance; knew of sales and prices; "know of good many sales and had made deals"; and the real estate agent had handled such sales. And based on this knowledge of the offers and sales of realty approximately the same distance from Carthage but in other directions, they concluded they were familiar with the cash market value of the surface and dwelling on the acre tract and estimated its value in 1946 to be from $2,000 to $3,000, in contrast to the estimates United's witnesses, who had examined the dwelling, which ranged from $300 to $350 to $750 or $800.

■ The elemental rule which United here invokes is summarized in 19 Tex.Jur. p. 206, to-wit: "Before a witness may be allowed to state his opinion of the value of

property, he must show his qualification. While this does not mean that he must qualify as an expert, it does mean that he must show that he has had an opportunity to form an intelligent opinion on the subject, superior to those of the jury. Such showing should reveal that he has some knowledge of the property and of its value at the time and place in question." And in the application of above yardstick as pertinent to the instant record, United cites J. B. Watkins Land-Mortgage Co. v. Campbell, 98 Tex. 372, 84 S.W. 424; Wichita Falls & W. Ry. Co. of Texas v. Wyrick, Tex.Civ.App., 147 S.W. 730; Rathburn v. Miller, Tex.Civ.App., 266 S.W. 818.

As stated in Texas Pacific Coal & Oil Co. v. Taylor, Tex.Civ.App., 47 S.W. 2d 1110, 1111, and applicable to the sufficiency of the knowledge of the witnesses upon which to base their opinion of value, it is stated, "No rule can be formulated as to what constitutes a sufficient showing of qualification of a witness to give his opinion concerning the value of land, and it is generally held that the matter is very largely within the discretion of the trial court, and that an appellate court will not disturb the ruling of the trial court thereon, unless a clear abuse of discretion is shown." See also Byrd Irr. Co. v. Smyth, Tex.Civ. App., 157 S.W. 260, 262, and authorities there collated. The knowledge of the witnesses as to values of realty situated approximately same distance of Carthage, although in other directions, their familiarity of the land in controversy, their long residence in the area and the fact that Carthage is a town of a few thousand with a limited area in territory would not warrant this court to hold that the trial court abused his discretion in admitting the opinions as to value.

Points 11, 12 and 19 have been considered and are respectfully overruled.

In our former opinion we expressed the view that the former decree and sale had become final as between United and all parties named in that decree except movants and that the interest of all parties except movants had become vested in United at the time of the hearing of this revisory proceeding. We also pointed out that effect be given to Rule 778, Texas Rules of Civil Procedure, in the taxing of costs in the former proceedings or any subsequent partition proceedings and that such court costs so incurred or to be incurred, and the taxes paid by the receiver shall be taxed against United and movants in accordance with the value of their respective interests as same existed at the time the revisory action was heard. The Supreme Court has sustained above conclusions. It appears from the evidence that at this time movants own an undivided interest of 17/32 of the minerals in the 20-acre tract and 1/2 interest in the surface of same, and 9/16 interest in both the minerals and surface of the acre tract, and United owns all the remaining interest in above estates, with the estates and undivided interest of both movants and United subject to the leasehold estate owned by Humble. The court costs and taxes will present only a matter of calculation from the records. Such circumstances will not require a reversal of the judgment or remand of the cause as above matters can be cured by an affirmance in part and a reversal and remand in part with instructions.

Accordingly the decree so far as it granted movants a new trial; which decreed that the mineral and surface estate of the 20-acre tract was capable of a fair and equitable partition in kind; which decreed that the one acre was not capable of being partitioned in kind and ordered it to be sold; and the appointment of a receiver and commissioners to consummate such orders are affirmed.

The trial court is directed to amend the judgment and substitute therefor a judgment decreeing and determining the respective interests of movants and United in each estate as above indicated; taxing the costs and taxes on a pro rata basis according to the respective interests owned in each estate; and the receiver and commissioners be so governed and proceed under the record as so amended.

Appellant and appellees are each taxed one-half of the costs of this appeal.

Affirmed in part and reversed and remanded in part with instructions.