## NORTHERN TEXAS UTILITIES CO. v. FLOYD. (No. 3280.)

Court of Civil Appeals of Texas. Amarillo.
Oct. 9, 1929.

Rehearing Denied Oct. 30, 1929.

Penix & Penix, of Wichita Falls, for appellant.

Carrigan, Britain & King and H. R. Wilson, all of Wichita Falls, for appellee.

RANDOLPH, J. This suit was originally brought by J. W. Floyd, appellee, against the Northern Texas Utilities Company, the Community Natural Gas Company, and R. M. Hampton. The defendants each filed pleas in abatement, which were sustained, and thereafter the plaintiff, J. W. Floyd, filed an amended petition, in which he sued the Northern Texas Utilities Company and R. M. Hampton. The case was submitted to a jury on special issues, and, on the findings of the jury, judgment was rendered in favor of plaintiff, Floyd, against the Northern Texas Utilities Company, and against the plaintiff and in favor of the defendant Hampton. From this judgment, this appeal has been taken by the Northern Texas Utilities Company.

The appellant's brief contains 44 propositions, based upon 27 assignments of error and contains 110 pages of typewritten matter. It is impossible to discuss, within the limits of a reasonable opinion, the varied phases of the appeal thus presented and we will not attempt to do so. In our opinion, also, many of the propositions presented are related matters, and many others present no new or novel questions which require discussion; hence we will limit this opinion to a discussion of the controlling questions presented.

The record shows that there are at least two gas companies in the city of Vernon. In that city R. M. Hampton was constructing a residence, which he contracted to lease to the appellee when it was completed. Before the completion of the residence, and before appellee had taken possession of it as lessee, the said Hampton sold it to one Roberts, and executed and delivered to him a deed of conveyance of the property.

The appellant, Northern Texas Utilities Company, and the Community Natural Gas Company, each ran its gas lines to the said residence. At the request of the plaintiff, Floyd, who was to move into the residence, the Community Natural Gas Company connected its gas line to the house, so it would be in position to supply plaintiff with gas when he had moved. The appellant's yard line ran from its main gas line on to the lot leased by Floyd, but was not connected with the house of appellee, but ran to within about a foot of the same, and its meter was attached to a riser on said yard line next to appellee's house.

On November 8, 1927, an employee of defendant Hampton, who was grading the yard around the house, permitted the harness used on his team to catch on the meter of the appellant, and thus cracked and broke the line connecting the meter with the appellant's gas line, leaving the meter swinging loose and thus permitting gas to escape from appellant's line. E. W. Hampton, a brother of defendant Hampton, finished breaking the line off and stuck some paper and a stick into the end of it to keep the gas from escaping and then notified appellant's manager that the gas was escaping so that it might be cut off.

The connection of appellant's main gas line with the Hampton yard line terminated the line carrying the gas about 12 inches from the foundation of the residence occupied by appellee and some 4 or 5 inches below the surface of the ground. The appellant sent one of its

agents to cut off the escaping gas, and he testified that he did so on the 8th day of November, 1927. Some time after this, and before the 28th day of November, 1927, the appellee moved his family and household effects into the house, and on November 28, 1927, an explosion occurred in the residence thus occupied by appellee, which was caused by gas that had collected under the foundation and in the walls of the house, and which wrecked it and caused the damage complained of. On January 6, 1928, the cut-off leading from the main line of the appellant to the yard line, which ran near appellee's house, was uncovered, and it was discovered that the cut-off was open, and that gas was running from it at the exposed end of the line.

It can be of no material consequences to the discussion of the case for us to attempt to recite each fact and circumstance called to our attention by appellant; as all such facts and circumstances were passed on by the jury, and as there is evidence to support the jury's findings, we are not authorized to set them aside.

Issue No. 1 submitted to the jury is as follows:

"Was the explosion described in plaintiff's petition caused by gas passing through the pipe line of the Northern Texas Utilities Company and into the yard pipe line leading from said pipe line of defendant Northern Texas Utilities Company to a point near the foundation of plaintiff's house?"

This issue was answered in the affirmative.

Issue No. 2 is as follows:

"Was the defendant Northern Texas Utilities Company negligent in permitting gas to flow from its pipe line into the yard line leading to the plaintiff's house?"

This the jury answered: "Yes."

Issue No. 3 then submitted to the jury the question:

"Was the negligence of the defendant, Northern Texas Utilities Company, if any, a proximate cause of the explosion described in plaintiff's petition?"

This was answered: "Yes."

■ The possibility that some one had opened the cut-off in appellant's line, and the possibility that it had not in fact been closed, as testified to by appellant's witnesses, must have been considered by the jury in arriving at their verdict. The evidence nowhere shows that the gas was escaping prior to the explosion from any pipe line except that of appellant. Taking the whole of the evidence into consideration, it appears that there was evidence to support the jury's verdict, and, as stated, we are not authorized to disturb that verdict. Mansfield v. Rigsby (Tex. Civ. App.) 273 S. W. 290, 291, and authorities therein cited.

■ The appellant insists that it showed that the cut-off on its gas line leading into the yard line was closed prior to the explosion, and that under the evidence it was entitled to an instructed verdict. The evidence, however, shows that, when the earth was removed from over the cut-off on January next after the explosion, the cut-off was open and gas was escaping from the end of the pipe line. It may have been possible that some one had theretofore dug down to the cut-off and opened it, between the time appellant's witness testified it was closed and January 6th, the date of the last proof of the pipe line leaking, but there is no evidence upon which to base this presumption; hence the jury could well say that, when the witness testified that he had closed it, he was mistaken.

The appellant's contention that, when the Community Gas Company removed the black pipe and inserted a galvanized iron pipe in lieu of it, the connection running under the house was broken, or may have been broken, may or may not be correct; but there is no evidence that the pipe was broken, and the fact that the pipe line was broken could only be a pure speculation.

The appellant complains that the plaintiff's first amended original petition shows on its face a misjoinder of parties defendant and causes of action. The petition alleges a cause of action against appellant and defendant Hampton as joint tort-feasors, in that each of those parties were negligent in permitting the gas to escape, and that their negligence concurred to produce the explosion and to cause the damage complained of.

■ There may be several efficient causes operating to contribute to an injury, and which injury, without the operation of each, would not have occurred, each cause is a proximate cause. Amarillo Traction Co. v. Russell (Tex. Civ. App.) 290 S. W. 905, and the authorities therein cited.

■ An allegation that each of the defendants were guilty of the acts contributing to plaintiff's damage is practically an allegation that they were joint tort-feasors, and either or both are liable as the proof sustains the allegations. This is true, even though the jury should find that only one of the defendants was guilty of the negligence complained of. In the Russell Case above cited, the party who contributed to the injury of plaintiff, along with the defendant traction company, was dismissed from the suit, and was not involved in the final trial; but the doctrine as laid down above was applied to the remaining defendant.

We have considered all propositions and all assignments of error, and, finding no reversible error, we affirm the trial court's judgment.