**PANHANDLE & S. F. RY.. CO. v. SLEDGE et al.** *

No. 3406.

Court of Civil Appeals of Texas. Amarillo. July 12, 1930.

Rehearing Denied Sept. 10, 1930.

Terry, Cavin & Mills, of Galveston, Madden, Adkins, Pipkin & Keffer, of Amarillo, and Wilson, Randal & Kilpatrick, of Lubbock, for appellant.

Schenck & Triplett, of Lubbock, for appellees.

HALL, C. J.

This action was instituted by Mrs. Josie Sledge, joined by her husband, G. L. Sledge, to recover damages on account of personal injuries which she received while she was employed in operating the boarding cars used by the bridge gang employed in working upon the defendant's line of railway.

The case was tried to a jury and resulted in a verdict in favor of appellee against appellant railway company in the sum of $1,097.

The first contention is that the court erred in overruling the appellant's general demurrer to the appellee's petition.

Omitting the formal parts and setting out only the material allegations, the petition is substantially as follows:

That defendant owns and operates a line of railway which extends from Lubbock to Canyon and into and through the town of Cleta, and that during the entire year of 1928 and ever since said time defendant has operated said railway, tracks, lines, and cars in the usual and customary way. That on or about the 3d day of April, 1928, said defendant was operating said line of railway and trains of cars, and for the purpose of keeping up the roadbed, track, lines, depots, fences, and other improvements on and along the right of way of said railway at and between the towns of Lubbock and Cleta, said defendant company was using a bridge gang or construction gang, and that, for the purpose of maintaining said gang or force of workmen, said company furnished for use by them certain cars or train of cars, fully equipped with convenient places to sleep at night and at other necessary times, and a convenient place for cooking and serving meals for the use and benefit of said workmen and employees, and so maintained said cars or train of cars from the 3d day of April, 1928.

That on said last-named date the said G. L. Sledge was employed by defendant company. as a workman or employee with said construction gang. That the plaintiff Josie Sledge, the wife of G. L. Sledge, was also employed by said defendant company, its officers and agents, to operate said dining car and said sleeping cars; her duties being to cook and serve meals to said employees in the service of the defendant railway company and look after the dining car and cooking department and to look after and do certain work on all of the dining and sleeping cars and departments, she to furnish all groceries and other articles cooked and to be cooked and prepared by her for serving in said dining car, at her own expense, and to charge therefor a price to be fixed by the defendant company; she to receive as compensation for her services all profits that she might make by serving said company, its servants and employees, as alleged, and staying or living at or on said cars, and that her husband G. L. Sledge was to receive, and did receive, a fixed

wage or salary for his personal services as a member of said bridge gang.

That plaintiff charged for said dining room services the amount fixed and directed to be charged by defendant company; the charge being for each person about $1 per day. That, in order to purchase, prepare, and serve such meals, plaintiff was compelled to hire help, which was an extra cost, and, after all expenses were paid each month, said plaintiff made and secured for her services about the sum of $50 or $60 per month.

That at such time plaintiff Josie Sledge was about 47 years of age, was in good health, strong, weighed about 200 pounds, and was physically and otherwise able and competent to carry on the work required of her, and did carry on such work in a manner satisfactory to said defendant and its employees. That she began her labors as such employee about the 2d day of April, 1928. That plaintiff employed one Julia Little, at her own cost and expense and with the knowledge and consent of said defendant company, to assist plaintiff in her said duties. That the said Julia Little remained at and on said cars at all times along with plaintiff and performed such labors as were required of her.

That on or about the 3d day of April, 1928, it was verbally agreed and understood by and between plaintiff and the defendant, acting by and through its authorized agent and foreman, Dan Amberg, that, if plaintiff would prepare, furnish, and serve the meals required for the employees of the defendant in connection with the work being carried on by said company as aforesaid, defendant would furnish a movable toilet for the use of plaintiffs, and particularly for the use of the plaintiff Josie Sledge and the other ladies with said crew. That, at the time of making such contracts and agreements, it was customary for the defendant to furnish, in connection with said boarding car, a movable or other suitable toilet for the use of persons operating said boarding car and particularly the ladies connected therewith, and it thereby became the implied duty of said defendant company to furnish said toilet with said cars or in connection therewith at the points where said cars were stationed, for the use of the ladies connected therewith. That plaintiffs relied upon said company to carry out and perform its obligation and agreement and contracts to furnish a toilet for the use of said ladies and particularly the plaintiff Josie Sledge on said cars, and depended upon said defendant company to perform its said duty and obligation to furnish the same as alleged. That, at the date of making the alleged agreements, defendant company did not have or furnish, although it had done so prior to said time, a toilet for the use of said plaintiff and the other ladies connected with said car, but soon after making said contract and agreements and soon after plaintiff took up her duties on

said boarding car, she observed the absence of such toilet and took it up with the agent of the company in charge of said bridge gang, who was then the authorized agent of the company and who agreed with these plaintiffs that, if plaintiff Josie Sledge would go on with her work of furnishing and serving meals, the defendant company would furnish a toilet for the use of the plaintiff, and thereupon said company did furnish a toilet of a collapsible nature, which was carried along with said bridge gang and cars, being taken down while moving and set up on the right of way of said company when the cars were stopped for work, and that said toilet met all the requirements and necessities of said plaintiff and the other ladies who had business at or on said cars, until the defendant company failed to furnish said toilet as alleged.

That about the 21st day of August, 1928, said defendant's bridge gang and cars were located at the city of Lubbock, but, on account of some wreck or emergency business at or near the town of Cleta, the defendant company, by the use of one of its engines or locomotives, removed said bridge gang and cars from the city of Lubbock, leaving immediately, without giving notice or sufficient time to allow the placing of said toilet on said cars, but left said toilet at the city of Lubbock, and therefore had no toilet with said bridge gang for plaintiff's use. That the removal of said cars and bridge gang was done on such short notice that plaintiff Josie Sledge, as well as Julia Little and Dan Amberg, the foreman of said crew, and some of said bridge gang employees, were left in the town of Lubbock, although they were expected to go with said bridge gang cars, and said persons were compelled later to follow and join said bridge gang cars. That defendant company also failed at said time to take the push car and other tools and implements necessary and proper for use by said bridge gang. That said defendant company could have taken said toilet at said time, or could have taken it on what is known as the push car, it being empty and was later taken along, but said company failed and refused to take said toilet along in any of said cars or to send the same at a later date. That the bridge gang cars were taken from Lubbock to Cleta and there stationed and left while said bridge gang was engaged in work for said company. That, while stationed at Cleta, said plaintiff Josie Sledge and the other ladies were compelled to do without the use of a toilet in connection with said cars. That other similar gangs of said defendant were provided with toilets, either in said cars or on the right of way, to be used when and where said cars were stopped.

That about August 28, 1928, while stationed at said town of Cleta as aforesaid, plaintiff was compelled to use a slop jar to attend to the calls of nature, at all times dur-

ing the daytime, said cars being stopped in a public place, and on account of the men being in and around said cars at night was also compelled frequently to use a slop jar at night. That plaintiff and the said Julia Little both used a slop jar as aforesaid, and, in order to be sanitary and prevent trouble, disease, and bad odor, were compelled to carry the same out of said cars, and they each did carry the same out at different times, as so required by said company, and as all reasonably prudent ladies would have done under the same or similar circumstances. That said cars were stopped and located at the town of Cleta without the use of a collapsible or other kind of toilet for more than a week, and on or about August 28, 1928, said plaintiff Josie Sledge, while undertaking to empty her slop jar, took the same and carried it out of one of the cars in which she was living onto the right of way, she remaining at all times on the right of way of said company, and, while attempting to empty the same in a ditch or low place, at a convenient and protected spot where the same would not be offensive, and to protect said defendant company, its agents, servants, and employees, and while thus engaged in emptying the same, she using both ordinary and a great degree of care to prevent injury to herself, and using that degree of care in such operation as any reasonably prudent person would have used under the same or similar circumstances, said right of way at same time and place being the only place furnished her, being irregular and unsafe, she fell to the ground and slipped into said ditch or low place, her foot turning on account of the irregular and negligently constructed condition of said right of way at said place, and on account thereof, broke her left leg at the knee, broke the bones and strained the muscles thereof, and dislocated the knee joint and cap, bruised the flesh, skin, and muscles of her said left leg, and injured her body and nervous system. That the said Josie Sledge, on account of said fall, had her left leg broken and the muscles, tendons, and ligaments thereof torn and severed.

That said defendant company knew, or could have known by the exercise of ordinary care, that said injury could and would have happened at the time and place it failed and refused to furnish a toilet for said plaintiff. That the plaintiff Josie Sledge was without fault or negligence in bringing about said injury. That plaintiff's injuries were caused by said negligence and carelessness of said defendant company, its agents, servants, and employees in charge of said bridge gang and cars, in not furnishing for the use by said plaintiff a toilet in said car or a collapsible toilet or other toilet placed on said right of way at said time and place and safe place to live and work and in leaving the condition for more than a week so that said plaintiff would be compelled, during said time, to use a slop jar and empty and take care of same as alleged, and that the exercise of ordinary care by defendant, under the circumstances alleged, required that a toilet for said plaintiff be provided, and, had such toilet been furnished and provided by said defendant at the time and place, plaintiff's injuries could and would have been avoided and plaintiff would not have received such injuries at the time and place as alleged.

That plaintiff Josie Sledge, at the time of said injury, was earning more than $50 per month, clear of all expenses, and her said services were well and reasonably worth that amount, and she could and would have continued to earn that amount of money at this time, and for many years hereafter. That said injuries have caused said knee, leg, and foot of plaintiff to become stiffened and still pain her in various ways, she being compelled to use a crutch while walking or getting around, and on account of said injury and condition she has been unable to pursue her said vocation or any other kind or character of work, or to do any other kind of manual labor since said time, and is therefore totally and permanently injured on account thereof, and her said leg and injury are incurable, and she is thereby forever unfitted to pursue her said vocation, either at her home or on or with any character of railway gang or bunch of laborers in need of such services, and that by reason of her said injuries she has lost said earnings and will continue to lose said earnings the remainder of her life, and in addition thereto has suffered, and will suffer, physical and mental pain and anguish.

That by reason of said injuries, in addition to the above losses, plaintiff has been compelled to pay and become liable to pay for medicine and medical treatment the sum of $500, and said plaintiff is at this time under the treatment of a physician and likely will be compelled to remain under the treatment of a physician at different times throughout the remainder of her life, which will cost, in all probability, from $500 to $1,000. That said injuries caused her great mental and physical pain and rendered her a cripple for life, and her ability to earn money and make a living and aid her said husband with the household and other duties of a wife has been thereby permanently impaired, injured, and greatly reduced, all to the actual damage of plaintiffs in the sum of $20,000.

The appellant railway presents the case here upon numerous assignments of error and propositions which we feel are immaterial, in view of the disposition we make of the principal contentions.

Appellant first urged its general demurrer, which was overruled by the court and duly excepted to, and that is the first matter urged.

■ In our opinion the petition is subject to a general demurrer, and the court erred in not sustaining the defendant's demurrer.

■■ Admitting that the appellant breached the legal or contractual duty it owed plaintiff Mrs. Sledge in failing to provide a toilet for her use, still the injuries complained of are too remote and could not reasonably have been expected to follow the defendant's negligence without the concurrence of some unusual occurrence in the absence of which the injuries would not have happened. According to the petition, the injury is not such as might reasonably have been anticipated by the defendant. No causal relation between the alleged act of negligence and the fall into the ditch at the place where the injury occurred is shown. It appears that she selected the particular place in the ditch where she desired to go, and it is not shown that such place was unusually dangerous, nor is it charged that defendant was negligent in compelling her to go there. It is not ordinarily expected that people will fall into ditches which they know to be there, and it does not appear that the fall or the resultant injuries were the natural or probable result of the alleged negligent act. Plaintiff does not allege that she was required to empty her slops and garbage into the ditch or in any other place designated by the defendant. In this regard she exercised her option. To be a proximate cause, the negligence complained of must be such that by the usual and natural course of events the injury would reasonably be anticipated. Consequences which are only possible are not to be held as usual, natural, or even probable. The mere failure to provide a toilet conveys no idea of danger or of personal injuries as a result thereof. A prior and remote cause cannot be made the basis for an action for damages if it did nothing more than furnish the condition or give rise to the occasion by which the injury was made possible if the injury is the result of some other cause which reasonable minds would not have anticipated, even though the injuries would not have happened but for such condition. The danger or apparent danger must exist in the condition itself.

In the case of Seale v. G. C. & S. F. Ry., 65 Tex: 274, 57 Am. Rep. 602, it was shown that the railway company permitted combustible materials to accumulate upon its right of way and that sparks from a passing locomotive set fire to this material. The fire spread to plaintiff's land, and plaintiff's daughter undertook to extinguish the fire, and, while attempting to do so, her clothes caught fire and burned her so that she died. In sustaining a general demurrer to the petition, the Supreme Court said: "Whether the deceased was negligent or not in her attempt to put out the fire, we think that this attempt, and not the original negligence of the defendant

in starting the flame, was the proximate cause of her death."

So in the instant case, if the defendant was negligent in failing to load on the construction train seven days before the accident the collapsible toilet which it had provided, and even though Mrs. Sledge was not guilty of negligence at the time of her injuries, her attempt to step down into the ditch at the particular place which she had selected was the proximate cause of her injuries, rather than the alleged negligent act complained of.

In the case of Texas & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162, 164, the plaintiff was injured because of a defective fastening upon the stock pens in which he had confined his cattle prior to shipment. It was shown that a passing train frightened the cattle and they broke through the gate, injuring the plaintiff. In discussing the question of negligence, the court asks the question: "Was there an unbroken connection between the wrongful act and the injury—a continuous operation?" Judge Gaines answers the question in the following language: "We think not. But for the defective fastening to the gate, the injury could not have happened. Hence the alleged negligence of the defendant brought about the condition that rendered the accident possible. The active cause which produced the injury was wholly independent of the negligence of the defendant, and wholly disconnected from it. Ought the agents of the company to have foreseen that as a result of the imperfect fastening of the gate, the injury, or any injuries similar in character would probably result? In our opinion, nothing short of prophetic ken could have anticipated the happening of the combination of events which resulted in the injury of the person of the plaintiff."

See, also, Gulf, C. & S. F. Ry. v. Bennett, 110 Tex. 262, 219 S. W. 197; Franklin v. Houston Electric Co. (Tex. Civ. App.) 286 S. W. 578; Magnolia Petroleum Co. v. Cocke (Tex. Civ. App.) 3 S. W. (2d) 139; Van Velzer v. Houston Land & Trust Co. (Tex. Civ. App.) 16 S. W. (2d) 865; Prokop v. Gulf, C. & S. F. Ry. Co., 34 Tex. Civ. App. 520, 79 S. W. 101.

If, however, we are mistaken in holding that the petition is subject to a general demurrer, it is clear from the uncontradicted facts as testified to by the plaintiff Mrs. Sledge that the alleged act of negligence was not the proximate cause of her injuries. In discussing the conditions and circumstances at the time she was injured, she testified on direct examination, as follows: "As to what caused me to fall when I went to step down, this foot caught on some object—the right foot caught on some object and I fell. As to what that object was I could not say exactly, because I was hurt pretty bad."

On cross-examination she testified: "I did not ever determine what caught my foot and made me fall as I stepped down into this drainage ditch. Mrs. Little was not right at me when I fell, I guess she was about ten feet from me. She was carrying out garbage too. We were not talking to each other. We were just walking along there Indian file and not saying a thing to each other. I could see this ditch as I got to the edge of it. When I got to the edge of the ditch I just went to step down and this right foot caught on an object here and I just fell over on my leg. That happened just as I stepped down into the ditch.. * * * Some object caught my foot there. My foot just caught, this foot here. I reckon if my foot had not been caught there that I would have stepped down into the ditch just like I had been doing for nearly a week before that time. I certainly stepped down there in the normal way that I had been doing."

No effort was made to show what object tripped Mrs. Sledge while she was in the act of stepping down into the ditch. That there was something which tripped her is shown by her own uncontradicted testimony, and it is not charged that the defendant is responsible for the presence of the offending object at that place or that the object created a dangerous place for her to perform her duties. In the light of this fact, the object which tripped her is the proximate cause of her injuries, and in no event is she entitled to recover because of the negligence alleged. City of Dallas v. Maxwell (Tex. Com. App.) 248 S. W. 667, 27 A. L. R. 927.

The case seems to have been fully developed upon the trial, and, because under the facts as testified to by plaintiff the judgment is not supported by the evidence, the court should have given the appellant's first requested instruction and directed a verdict for the defendant.

For the reasons stated, the judgment is reversed, and is here rendered that the plaintiffs take nothing.