Mrs. Patricia BIGGERS et al. (Betty Jo Epps Groce et vir), Petitioners,

v.

CONTINENTAL BUS SYSTEM, Inc. et al. (Mrs. Patricia Biggers et al.), Respondents.

No. A–5280.

Supreme Court of Texas.

Dec. 12, 1956.

Rehearing Denied Feb. 27, 1957.

Butler, Binion, Rice & Cook, Houston, Wm. N. Blanton, Jr., Houston, Pepper & Markward, Ft. Worth, James P. Hart, Austin, for petitioner.

Andrews, Kurth, Campbell & Bradley, Hall E. Timanus, Houston, Looney, Clark & Moorhead, Austin, Chilton Bryan, Houston, Strasburger, Price, Kelton, Miller & Martin, Dallas, Hamblen & Bobbitt, Houston, for respondent.

GRIFFIN, Justice.

This is a suit by Mrs. Patricia Biggers and her children against the Continental Bus System, Inc. for damages resulting from a collision between a Ford car driven by Enoch A. Biggers, Jr., husband and father of petitioners, and a passenger bus belonging to Continental Bus System driven by Jack P. Lanham, an employee of the Bus Company. The collision took place on Highway 75 about eight miles north of Huntsville, Texas, about 8:52 a. m. on December 20, 1951. Enoch A. Biggers, Jr. was instantly killed in the collision.

The bus belonging to the Bus Company was proceeding generally in a northerly direction from Houston to Madisonville, Texas, upon Highway 75, and was on its own proper right side of the highway, well to the right of the center stripe of such highway. The collision between the vehicles took place a few hundred feet north of a bridge across Nelson Creek on said highway. The highway was 24 feet wide at the

point of the collision and the bridge was 28 feet wide. As the bus was being driven north along the highway, three automobiles were coming south down the highway. The first was a Hudson car; approximately 100 or more feet behind the Hudson was the Ford car driven by Enoch A. Biggers, Jr., and a short distance behind the Ford was a Chevrolet automobile driven by Miss Betty Jo Epps accompanied by Mrs. Ernest De Jernett. It had been raining the night before and the paved portion of the highway was wet, but there is no evidence that the highway was slick. As the Hudson approached the bridge across the highway the driver of the Hudson slowed down to observe the creek to ascertain if it was too muddy for fishing. The shoulders on both sides of the highway were wet and muddy. There is evidence that the Hudson had been driven along at 40 to 45 miles per hour and slowed to 10 to 15 miles per hour. The Ford car was being driven faster than the Hudson, so when the Hudson slowed down the driver of the Ford put on his brakes to avoid a collision with the Hudson. Mrs. Gross (then Miss Epps, who by the time of the trial had married Wm. Gross) saw the brake light of the Ford go on, and she put on her brakes to avoid colliding with the Ford. Her brakes "locked", i. e., the brakes locked her wheels and she slid into the Ford striking it a little to the right of the center of the rear bumper. This resulted in the Ford car being propelled diagonally eastward across the highway and in front of the bus and into the bus' righthand side of the highway. The collision resulted between the bus and the Ford and all three occupants of the Ford were killed instantly.

Upon a trial before a jury the jury answered 79 special issues favorable to the plaintiffs and judgment was rendered for plaintiffs against the Bus Company and Mrs. Gross and husband in the sum of $101,800. The jury found the driver of the bus guilty of negligence in failing to keep a proper lookout; in failing to apply his brakes; and in driving at an excessive rate of speed; in driving at a speed in excess of 55 m. p. h., and found each act of negligence to be a proximate cause of the collision. The jury found Mrs. Gross guilty of certain negligent acts which were also a proximate cause of the collision. Plaintiffs plead "discovered peril" as a ground of recovery and the trial court by appropriate issues submitted this ground of liability. The jury, in answering these issues, found that the discovery by the bus driver of the perilous position of the deceased did not occur at such time that the driver could have avoided the collision. Therefore, any liability on the part of the Bus Company by virtue of the doctrine of discovered peril is not in the case as presented to us. All parties are agreed that no recovery can be had under that doctrine.

Upon appeal the Court of Civil Appeals reversed and rendered the judgment against the Bus Company upon the ground that, as a matter of law, the negligent acts of the bus driver (assuming that he was negligent) were not a proximate cause of the collision. The judgment of the trial court was otherwise affirmed. 277 S.W.2d 228. A more detailed statement of facts will be found in the Court of Civil Appeals' decision.

■ All parties agree that plaintiff must recover, if at all, under the findings of the jury as to primary negligence and proximate cause. The plaintiffs, having recovered a judgment in the trial court on favorable jury findings, and this judgment having been rendered against plaintiffs on "no evidence", it becomes the duty of this Court "to examine and consider all of the evidence bearing on the controlling issues, and having done so to decide whether there is evidence of probative value to support the answers made by the jury to the issues." Hall v. Medical Bldg. of Houston, Texas, 1952, 151 Tex. 425, 251 S.W.2d 497, 498.

■ It is also well settled that there can be more than one proximate cause of a collision, and that all those whose negligence is a proximate cause will be liable in damages for the results of the collision.

Walsh v. Dallas Railway & Terminal Co., 140 Tex. 385, 167 S.W.2d 1018; Blakesley v. Kircher, Tex.Com.App., 41 S.W.2d 53, 55; Northern Texas Utilities Co. v. Floyd, Tex.Civ.App., 21 S.W.2d 6, wr. dism., w. o. j.; 30–B Tex.Jur. 223, Sec. 44.

For a negligent act or omission to be a proximate cause, the result of such act must be one which was a foreseeable result. "But it seems to us that as applied to the law of negligence, at least, a better ground for the rule [of proximate cause] is that a party should not be held responsible for the consequences of an act which ought not reasonably to have been foreseen. In other words, it ought not to be deemed negligent to do or to fail to do an act when it was not anticipated, and should not have been anticipated, that it would result in injury to anyone. To require this is to demand of human nature a degree of care incompatible with the prosecutions of the ordinary avocations of life. It would seem that there is neither a legal nor a moral obligation to guard against that which cannot be foreseen, and under such circumstances the duty of foresight should not be arbitrarily imputed." Texas & P. Ry. Co. v. Bigham, 1896, 90 Tex. 223, 38 S.W. 162, loc. cit., 2nd col., at page 163. Safeway Stores of Texas v. Brigance, Tex.Civ.App.1938, 118 S.W.2d 812(5), dism., w. o. j.; Phoenix Refining Co. v. Tips, 1935, 125 Tex. 69, 81 S.W.2d 60(1); City of Dallas v. Maxwell, Tex.Com.App.1923, 248 S.W. 667(2, 3), 27 A.L.R. 927; 30–B Tex.Jur. 217, Sec. 40, and p. 222, Sec. 43.

It is not necessary that the defendant should or would reasonably anticipate the very consequences or the exact nature of the plaintiff's injury or the precise manner of its infliction in order that such consequence be foreseeable. " * * * It is sufficient that the defendant would reasonably have anticipated consequences or an injury of the general nature of that which ensued. * * * " Hopson v. Gulf Oil Corp., 150 Tex. 1, 237 S.W.2d

352, 356; Sullivan v. Flores, 134 Tex. 55, 132 S.W.2d 110, 111.

" * * * A prior or remote cause cannot be made the basis of an action for damages if it does nothing more than furnish the condition or give rise to the occasion which makes the injury possible, if such injury is the result of some other cause which reasonable minds would not have anticipated, even though the injury would not have occurred but for such condition. Panhandle & S. F. Ry. Co. v. Sledge, Tex.Civ.App., 31 S.W.2d 146, 149; Sledge v. Panhandle & S. F. R. Co., Tex. Com.App., 45 S.W.2d 1112. * * * " Phoenix Refining Co. v. Tips [125 Tex. 69, 81 S.W.2d 61], supra.

"It is well settled that a person is not bound to anticipate negligent or unlawful conduct on the part of another. Texas & N. O. R. Co. v. Brannen, 140 Tex. 52, 166 S.W:2d 112; Seinsheimer v. Burkhart, 132 Tex. 336, 122 S.W.2d 1063; Minugh v. Royal Crown Bottling Co., Tex.Civ. App., 267 S.W.2d 861, wr. ref. * * * " De Winne v. Allen, 154 Tex. 316, 277 S. W.2d 95(2, 3), 98.

"A motorist may assume that a vehicle approaching on its own right side of the road will remain on that side, and he is not expected to anticipate that such vehicle will leave its side of the road and turn into his path." 60 C.J.S., Motor Vehicles, § 317 a, pp. 733–734.

With these principles in mind let us examine the evidence in this case, viewed most favorably to the plaintiffs, and in support of the judgmunt of the trial court. The bus driver stated that the Ford turned in front of the bus at a distance of some 15 or 20 feet, but he stated that was "just an estimate in feet. I couldn't be exact, * * *." He stated that as soon as he saw the Ford coming across the road into his lane of traffic, he swerved his bus to the right. Mitchell saw the bus swerve only one time, and

that immediately prior to the collision. Mitchell was driving a gasoline transport truck only a short distance behind the bus and testified that he saw the bus, the oncoming cars, the Hudson slow down, the Ford "jump" out in front of the bus, but he did not see the actual collision as he glanced down at his tachometer right after the Ford came across in front of the bus. Mrs. Gross, the driver of the Chevrolet, testified that she saw the brake lights on the rear of the Ford go on; that she realized the Ford was slowing down; that she stepped on her brakes and slid into the Ford; that she immediately closed her eyes, and turned off her ignition key and turned to her passenger, Mrs. De Jernett, and inquired of she were all right, and immediately heard the crash of the collision, and looked back over her left shoulder—her car having stopped—and saw the bus on top of the Ford, on the dirt shoulder of the highway and pushing the Ford in front of it. She did not see the Ford cross the highway. The bus driver testified that he did not know how fast the Ford was going at the time it pulled out in his lane of traffic, but that the Ford could have been going 30 miles per hour or down to 25 miles per hour. In answer to the query by plaintiffs' counsel as to whether the Ford could have been going 10 or 15 miles per hour, the driver answered, "I don't know, it might have been 10 or 15 miles an hour, or 20 or 25 miles per hour, or 30 miles per hour." The above was the slowest any witness testified the Ford was going. This shows to have been a pure guess. However, we will consider this as evidence binding on the Bus Company. The record does not show how many feet per second a car traveling 10 miles per hour will cover. It shows that at 20 miles per hour a car will travel 29.3 feet per second. Therefore, we can easily calculate that at 10 miles per hour a car will travel 14.65 feet per second; at 15 miles per hour it will travel 22 feet per second. The plaintiff is entitled to have the benefit of the slowest

speed that the record will support in order to give the driver of the bus the longest time for reaction. As to the distance between the bus and the Ford at the time the Ford crossed the middle line dividing the highway into two lanes, the plaintiff is entitled to have the farthest distance the record will support. We think there can be no doubt that if the Ford crossed into the traffic lane in such a short time the bus driver could not put on his brakes, or slow his speed before the bus was on the Ford car, then the failure on the part of the bus driver to keep a proper lookout, to slow down, or apply the brakes could not possibly be a proximate cause of the collision.

Respondents' witness, Mitchell, testified that the Ford was 150 feet to 175 feet in front of the bus when it came over in front of the bus. The faster the bus was traveling, the shorter time it would take to close the distance between the bus and the Ford. Mitchell testified he was going 40 to 45 miles per hour at the time, and the bus was making 20 to 25 miles per hour more than he. The jury found that the bus was traveling in excess of 55 mph.; therefore, 56 mph. is the slowest speed which we may assume the bus was traveling. At 56 miles per hour the record shows the bus would cover 82.13 feet per second. The plaintiff is entitled to have us accept 10 miles per hour, or 14.65 feet per second, as the speed of the Ford, and 56 miles per hour, or 82.13 feet per second as the speed of the bus at the time the Ford turned into the traffic lane occupied by the bus. This means both vehicles were coming together at a rate of 96.78 feet per second—the total of both speeds. Taking the greatest distance the record shows those vehicles were separated at this time as 175 feet, the collision occurred between the two vehicles in less than two seconds, or to be exact—1.8 seconds. It also demonstrates that speed at which the driver was driving the bus could not be a proximate cause of the collision, except as said by the Court of Civil Appeals

[277 S.W.2d 233] "* * * only in some such sense as that if its bus had not been on the highway at all the collision would not have occurred." See also East Texas Motor Freight Lines v. Loftis, 148 Tex. 242, 223 S.W.2d 613, 616; Davis v. Younger Bros., Tex.Civ.App., 260 S.W.2d 637, wr. ref., n. r. e., and cases therein cited. The speed of the bus did nothing more than furnish the occasion for the collision, but could not, under the facts in this case as we have detailed above, be a proximate cause thereof.

Petitioners contend that instead of taking the testimony of witnesses as to the distance between the two vehicles immediately preceding the time of the collision we are required to take into consideration the time element, if we are to view the facts most favorable to upholding plaintiffs' jury verdict. They cite the testimony of Lanham, the driver of the bus, that the Ford came down the highway in the bus' lane of traffic for a distance of 40–50 feet south, and 10–15 feet east after the Ford was knocked out of its own proper lane of traffic. A reading of the whole of Lanham's testimony shows that this distance was only a guess or estimate. But taking his testimony on this point we know the Ford did not go straight south, and then straight east to the point of collision. Of necessity, it must have proceeded at an angle. Figuring the distance traveled by the Ford as a right angle triangle whose base is 15 feet and its leg 50 feet, we find the hypotenuse would be 52.3 feet. This would represent the distance actually traveled by the Ford to the point of impact. How long would it take the Ford to traverse this 52.3 feet traveling at 10 mph., or 14.6 feet per second? A calculation will show the elapsed time to be 3.58 seconds, or practically 3½ seconds. The bus had to travel the same length of time from the entry of the Ford into the bus' lane of traffic to the point of collision as that traveled by the Ford. For the collision to occur it was necessary that both vehicles reach the point of impact at the same time. If the bus were traveling for a longer period of time, it would have cleared the point of collision. It makes no difference how far the bus traveled, it, of necessity, also had to travel for a period of 3.58 seconds.

An examination of the photographs introduced in evidence shows that the right front of the Ford struck the front end of the bus at approximately the center of the front of the bus. The impact is shown by a very distinct "v" shaped curving-in of the front of the bus with the apex of the "v" at the center of the width of the bus. The left front wheel of the bus ran into and upon the right side of the Ford about the center of the right front door. The left front wheel of the bus shows to be inside the Ford and immediately in front of, but touching, the front of the front seat. From the photographs it appears that the left front wheel of the bus hit at about one-third the distance between the front and rear of the Ford. To have cleared the point of impact the whole of the Ford would have had to continue until the rear of the Ford was past the total width of the bus. The photographs show that at the time of the impact the Ford was not traveling straight across the path of the bus, but it was traveling at an angle, or diagonally, to the path of the bus. Such being true, it would have required additional time for the Ford to have cleared the bus and the collision not to have resulted. To have cleared the point of impact—had the Ford been going squarely across the path of the bus—it would have been necessary not only for the two-thirds length of the Ford to have cleared, but also the Ford must have traveled the additional distance of one-half the width of the bus. The Ford traveling diagonally would have required an appreciably longer space of time, as it would have been necessary for it to also clear the length of the bus. This time would have been at least two seconds. This calculation gives the plaintiff the benefit of the greatest possible

distance and the shortest possible time in which the Ford could have cleared the bus. There was no evidence in the record that will support an assumption that the bus was more than 3.58 seconds in reaching the point of impact. Under all these facts and circumstances, we hold there was not sufficient time involved to have permitted the bus driver to have done anything to have avoided the collision.

We also hold that the failure of the bus driver to reduce his speed, or put on his brakes, was not a proximate cause of the collision.

■■■ For a negligent act or omission to be the proximate cause of an injury, the consequence of the act or omision must be a consequence which is probable according to ordinary and usual experience. Dallas Railway & Terminal Co. v. Hendrix, Tex.Civ.App.1953, 261 S.W. 2d 610, no writ history. In the recent case of Wiley v. Mercer, Tex.Civ.App. 1955, 282 S.W.2d 87, 88, no writ history, (a plea of privilege case), the plaintiff was riding in an automobile on her own proper side of the highway when her car was hit from the rear by another car. As a result of this collision the car was knocked out of control across the highway into the path of defendant's truck and the collision for which suit was brought resulted. Plaintiff pleaded the above facts more in detail and also pleaded that defendant was driving at an illegal and negligent rate of speed. It was further alleged that had defendant been driving at a legal and not negligent rate of speed he could have stopped the truck or otherwise avoided the collision. The facts as made by the allegations of the petitioner are similar facts to those in the case at bar. The trial court held, as a matter of law, that the allegations above referred to failed to show that the acts of the defendant, which included the speed at which he was driving, were a proximate cause of plaintiff's injuries. In affirming this hold-

ing by the trial court the Court of Civil Appeals said:

"We have carefully considered the pleadings of the plaintiff and have concluded that the trial court placed the proper construction thereon. The pleadings show that Mrs. Wiley, one of the plaintiffs, was operating her automobile in a column of cars in a westerly direction at a rate of speed not exceeding thirty-five miles per hour, that her car was struck in the rear by a car driven by one Herman Moen and without warning was knocked into the path of the oncoming truck driven by the agent of the defendants. It is well settled that the foreseeableness is a necessary element of proximate cause. We hold, as a matter of law, that the driver of the truck was not chargeable with foreseeing that a third party such as Herman Moen would negligently strike the car of the plaintiffs from the rear and cause it to, without warning, be driven upon the side of the highway immediately in front of the truck. Dallas Railway & Terminal Co. v. Hendrix, Tex.Civ.App., 261 S.W.2d 610, [no writ history]; Reeves v. Tittle, Tex. Civ.App., 129 S.W.2d 364 [wr. ref.]; Gann v. Murray, 151 Tex. 130, 246 S. W.2d 616."

In our case, we hold that the speed of the bus, as a matter of law, was not a proximate cause of the collision between the Ford and the bus. It is not a usual and customary happening that one car in a line of traffic will be unable to stop in time to prevent a collision with the car next ahead in the traffic. Mrs. Gross, the driver of the Chevrolet, did not foresee that her brakes would lock causing her to skid into the rear of the Ford. Neither is it usual and customary for one car in a line of traffic to collide with and propel the car hit into the right-hand side of the highway being used by approaching traffic. Therefore, such happening cannot be foresecable so as to be included in the definition of "proximate cause."

On the question of the failure of the bus driver to keep a proper lookout as being a proximate cause of the collision, we agree that there is no evidence in the record to support such finding. Until the Ford started across the center line into the traffic lane occupied by the bus, the record shows nothing at all to indicate that the Ford car would do otherwise than to remain in its own proper lane of traffic. In fact, Mitchell testified that previous to this time, the Ford had pulled out of its lane and over to the left in an apparent attempt to pass the Hudson, and the driver, apparently seeing he did not have room to pass safely, immediately dropped back into his proper southbound traffic lane. Had the bus driver seen this, which he did not, it would only have indicated to him that the Ford would not pull out in front of the bus. There is not one word of testimony from any witness, fact or circumstance in this record which can be construed as indicating that prior to the time the Ford pulled out in front of him, the driver of the bus should have done one thing to avoid this collision. We agree with the Court of Civil Appeals that under the circumstances of this case the bus driver was under no duty to anticipate the Ford would pull out in front of him until it actually did pull out of its line of traffic. The bus driver did not see the collision between the Chevrolet and the Ford. Neither did Mitchell, and Mitchell testified he could not see the collision due to the closeness of the cars and the fact that they were "bunched together" although Mitchell testified he was watching both the bus and the three approaching cars.

We think the case of Volkmer v. Curlee, Tex.Civ.App.1953, 261 S.W.2d 870, 873, wr. ref., is controlling on the question of failure to keep a proper lookout. In that case Volkmer was driving down a street which intersected the street on which Curlee was driving. The street on which Volkmer was traveling had a "stop" sign at the entrance to the street on which Curlee was traveling. The street on which Curlee was traveling had no "stop" sign at its inter-section. Volkmer testified he intended to stop at this sign, but that when he put on his brakes they failed to function, and he ran on out into the street and collided with Curlee's car, striking it broadside with the front of his (Volkmer's) car. Upon the trial of the cause the jury convicted Volkmer of negligent acts, a proximate cause of the collision, but also found Curlee guilty of contributory negligence in failing to keep a proper lookout which was found to be a proximate cause of the collision. Upon proper motion the trial court disregarded the jury's finding on contributory negligence and rendered judgment for Curlee against Volkmer. Upon appeal, Volkmer contended that there was evidence to support the jury's finding of contributory negligence and proximate cause. The Court of Civil Appeals affirmed the holding, among other things, that the element of "foreseeableness" was absent, so there could be no proximate cause. The Court said:

"Appellant testified that as he approached the intersection he observed the stop sign. He applied his brakes expecting to stop and was surprised when he failed to stop, and even after the event could not explain his failure to stop. It must be inferred that as appellant approached the intersection his speed was such and his control of his vehicle was such that he anticipated bringing his vehicle to a stop. And for the jury to hold that the failure of appellee to keep a proper lookout was a proximate cause of this collision, it would be necessary for the jury to find that appellee should have foreseen the occurrence of an event, the happening of which appellant himself cannot explain and the opposite of which appellant anticipated. To so find would be contrary to the experience of mankind."

So, in our case, Mrs. Gross testified that she saw the Ford stopping or slowing down; she saw the brake lights on the Ford go on; that she stepped on her brakes fully ex-

pecting them to hold and prevent her colliding with the Ford; that for some unexplained reason they did not hold, and she collided with the Ford. The evidence shows beyond controversy that this collision pushed the Ford across into the lane in front of the bus. We fail to see how the bus driver can be held to have been able to foresee this collision, or some similar happening which would propel the Ford into his lane.

In the case at bar no serious contention is made, nor could it be made, that anything done by the bus driver contributed to the loss of control of the Ford car when it came in front of the bus. We think what was said by the Court in the case of Surkey v. Smith, Tex.Civ.App.1940, 136 S.W.2d 893, 895, wr. ref., is applicable to our case:

> " * * * We think the evidence corroborates rather than contradicts the testimony of Smith that he did not see Surkey until he struck him. *He did not sound his horn, he did not apply his brakes, he made no effort to swerve his car in an effort to avoid striking Surkey. It would be contrary to human nature not to make some effort to prevent striking a person after discovering his perilous position.* Furthermore, it is shown that this accident happened very suddenly. If Smith was traveling as slow as twenty miles per hour he was traveling thirty feet per second, and it would thus appear that from the time Smith passed the Sharp car until he struck Surkey was less than two seconds, * * * ". (Emphasis added.)

We have carefully studied the record in this case and from all the facts and circumstances we find the Court of Civil Appeals to be correct in holding that the element of foreseeability is wholly lacking, and, therefore, no liability can be imposed upon the defendant Bus Company.

Mrs. Gross filed an application for writ of error in which she asked that the cause be reversed and remanded as to her. We find no errors pointed out in the Court of Civil Appeals or in this Court which would justify a reversal of this cause.

The judgment of the Court of Civil Appeals is in all things affirmed.

CALVERT, SMITH and WALKER, JJ., dissenting.

HICKMAN, C. J., not sitting.

CALVERT, Justice (dissenting).

I respectfully dissent.

To affirm the judgment of the Court of Civil Appeals this Court must nullify jury findings which established three grounds of liability of Continental Bus System based on the negligence of its bus driver in (1) failing to keep a proper lookout, (2) failing to apply his brakes, and (3) driving at an excessive rate of speed. The majority have reached their ultimate conclusion of no liability on the part of the Bus System by nullifying all findings of proximate cause. They apparently assume that the three findings of negligence have support in the evidence, but conclude that there is no evidence that any of such negligent acts or omissions was a proximate cause of the collision. I do not agree with that conclusion.

I can best present my views of the case by a separate discussion of the three grounds on which the trial court predicated liability. I shall discuss them in the order in which they are listed above. It should be borne in mind that the three grounds of liability are separate, distinct and alternative, and that the rule requiring the evidence to be viewed in its most favorable light in support of the verdict may, with respect to different findings, require an acceptance of exact opposite views of conflicting evidence. I know of no rule which permits us to test all findings by adoption of a single construction of the evidence which conforms with our view of the probable facts. We

should also bear in mind our announced rule that "Appellate courts are without authority to set aside jury verdicts, particularly on questions of proximate cause in damage suits, upon conflicting facts— the undisputed facts must be ample and clear, and the circumstances most exceptional to justify such action." Liberty Film Lines v. Porter, 136 Tex. 49, 146 S.W.2d 982, 983.

1. Failure to keep a proper lookout. I find in the record no evidence of probative force that the bus driver failed to keep a proper lookout. There is, therefore, no occasion to consider whether there is evidence that his failure to keep a proper lookout was a proximate cause of the collision. I do not reach the issue on which the majority nullify this ground of liability.

2. Failure to apply brakes. The bus driver admitted that he did not apply his brakes. The jury found that the failure was negligence. In my opinion there is evidence to support the finding, and its validity is not questioned by the majority. The majority simply say that the record shows conclusively and as a matter of law that the failure to apply the brakes was not a proximate cause of the collision because the collision would have occurred even if there had been a prompt application of the brakes. The two necessary elements of proximate cause are causation and foreseeability. Hopson v. Gulf Oil Corp., 150 Tex. 1, 237 S.W.2d 352, 355. The element said by the majority to be absent in this ground of liability thus appears to be that of causation.

The majority admit that, considered most favorably in support of the jury finding, the evidence will support a conclusion that there was three and one-half seconds of time intervening between the appearance of the Ford automobile in the wrong lane of traffic and the collision. The majority then reach their conclusion that the collision would have occurred in any event by viewing the photographs showing the point on the body of the Ford automobile at which the bus struck it and by concluding therefrom that the Ford would have needed "additional time" to have cleared from the path of the bus. I know of no evidence which shows, as a matter of law, that this "additional time" could not have been obtained by a prompt application of the brakes.

Assuming, as do the majority, that the bus was traveling at a speed of 54 miles per hour or 80 feet per second, it must have been approximately 280 feet from the point of collision at the time the Ford entered the wrong lane of traffic. It would have traveled that distance in three and one-half seconds. It is now generally agreed and accepted by the courts that the time necessary for a normal driver to react to danger is three-fourths of a second. See Chart, Blashfield's Cyclopedia of Automobile Law and Practice, Vol. 9c, page 413; Vietmeier v. Voss, Mo., 246 S.W.2d 785, 788; Ashbrook v. Cleveland Ry. Co., Ohio App., 34 N.E.2d 992, 994; Standard Oil Co. v. Crowl, 8 Cir., 198 F.2d 580, 582. In three-fourths of a second the bus would have covered a distance of 60 feet, thus leaving over 200 feet in which the brakes on the bus would have been operating to decelerate its speed. With no evidence in the record to show the rate of deceleration of the speed of the bus the majority have nevertheless concluded, as a matter of law, that the rate of deceleration would not have been such as to allow the additional time necessary for the Ford to clear from the pathway of the bus. With the same evidence of speed and distance and the same photographs before it, the jury concluded that a prompt application of the brakes would have allowed the Ford time to clear to safety. The majority holding to the contrary is a denial to the jury of the right to select which of two reasonable inferences it would draw from the facts.

What has been said thus far has been in an endeavor to show that the legal

conclusion of the majority on this phase of the case is erroneous even if their construction of the evidence be accepted. But the majority's construction of the evidence should not be accepted; it is not the most favorable construction in support of the verdict of which the evidence is reasonably susceptible. As a matter of fact, the majority opinion completely ignores important testimony bearing on the length of the time period between the emergence of the Ford into the wrong lane of traffic and the collision, testimony from which the jury could reasonably have concluded that the driver of the bus had more than three and one-half seconds in which to apply his brakes and decelerate the speed of the bus.

Mrs. Wm. Gross, driver of the Chevrolet automobile which ran into the rear of the Ford and one of the defendants in the case, testified that after colliding with the Ford she closed her eyes, opened them, turned off the ignition key, turned to her friend and asked if she was all right, and then heard the crash of the bus and the Ford at the same time her friend answered. The majority opinion recounts this testimony but apparently gives it no effect. There is in the record no estimate or opinion of the time consumed by the witness in the activities detailed, but the jury could conclude, on the basis of common knowledge and from the manner in which the witness related the events, that the period of time involved was ample for the bus driver to apply his brakes and so decelerate his speed as to allow the Ford to escape. But there was yet another basis for such a conclusion. On cross-examination of Mrs. Gross, counsel for Continental twice snapped his fingers to indicate a time lapse and inquired whether the time period between her collision with the Ford and its collision with the bus was greater or less than that indicated. The record does not show how many times counsel snapped his fingers on the first occasion. On the second occasion he snapped them three times. Each time Mrs. Gross testified

that the time which elapsed between the two collisions was longer than the time which elapsed while counsel was snapping his fingers. The record does not reflect how much time elapsed while counsel was snapping his fingers. For all we know it may have been three seconds, or five seconds, or ten seconds. In any event, the jury saw and heard the demonstrations, and in support of their verdict we must assume that from them the jury concluded there was time for the bus driver to apply his brakes and so decelerate his speed as to allow the Ford to escape. We must also assume that the demonstrations supported that conclusion. It was not the duty of the plaintiffs to prove how much time elapsed during the demonstrations; the evidence satisfied the jury. If Continental expected to contend that the demonstrations did not constitute evidence of probative force in support of the findings and to ask a reversal for that reason, it was under an obligation to further develop the matter so as to have the record reflect how much time elapsed during the demonstrations. This it did not do. And yet, in spite of Continental's failure to show that this evidence does not and cannot support the jury's verdict, the majority have nullified that verdict and rendered judgement for Continental. I respectfully submit that the majority should not ignore this highly material evidence which supports the jury's verdict, the while professing to follow the rule requiring a consideration of all the evidence in its most favorable light in support of the verdict.

I cannot agree that this record shows, as a matter of law, that the collision would have occurred even if the bus driver had acted non-negligently in a prompt application of his brakes. The time elapsing between the emergence of the Ford into the wrong lane of traffic and the collision is vital to the majority holding. The record reflects that in fixing that time at three and one-half seconds the majority have not viewed the evidence in its most favorable light in support of the verdict.

Moreover, the record does not compel a conclusion that three and one-half seconds, the time period accepted by the majority, was too little time for an avoidance of the collision by an application of the brakes on the bus.

3. Driving at an excessive rate of speed. As I understand the majority opinion on this phase of the case two reasons are assigned for nullifying the finding that the excessive speed of the bus was a proximate cause of the collision. They are that (a) the speed of the bus "only furnished the condition and gave rise to the occasion for the bus being present at the time and place of the collision" and (b) the bus driver could not foresee that the Chevrolet would strike the rear of the Ford and propel it into the wrong traffic lane. It thus appears that the element of proximate cause said by the majority to be absent from this ground of liability is that of foreseeability.

With respect to their holding that the speed of the bus only furnished the condition and gave rise to the occasion for the collision the majority state that the facts detailed in the opinion demonstrate "that speed at which the driver was driving the bus could not be a proximate cause of the collision, except as said by the Court of Civil Appeals '* * * only in some such sense as that if its bus had not been on the highway at all the collision could not have occurred.'" It is interesting to note that the approved quotation from the opinion of the Court of Civil Appeals was by that court borrowed from the opinion of the Eastland Court of Civil Appeals on original submission of Wright v. McCoy, 131 S.W.2d 52, 55, which court, on motion for rehearing, withdrew its holding that excessive speed could not, as a matter of law, be a proximate cause of a collision with a vehicle traveling in the wrong lane of traffic and thereby disavowed the very holding which the majority now approve as sound.

Approval by the majority of the quotation from Wright v. McCoy indicates that what they are actually holding is that speed of an automobile in its own lane of traffic can never be a proximate cause of a collision with an automobile proceeding in the opposite direction and in the wrong lane of traffic, because the law does not require that the driver of the speeding automobile foresee that the other will enter the wrong lane. There are cases from other jurisdictions which will support a holding either way on that question. See cases collected in the annotations in 77 A.L.R. 598, 601, and 47 A.L.R.2d 6, 95. The Texas cases on the question which I have found support a holding that excessive speed of a motor vehicle may be held to be a proximate cause of a collision with another vehicle in the wrong lane of traffic. Justiss v. Naquin, Tex.Civ.App., 137 S.W.2d 72, writ dismissed, judgment correct; Blocker v. Brown Express, Inc., Tex.Civ.App., 144 S.W.2d 451, writ refused; Womack v. Hazelwood, Tex.Civ.App., 271 S.W.2d 699, writ refused, n. r. e. It will be noted that this Court refused a writ of error in Blocker v. Brown Express, Inc., thus giving full approval to the opinion in that case and making that opinion as authoritative as one of its own opinions. The only case coming to my attention which even indicates a contrary holding is Davis v. Younger Bros., Tex.Civ.App., 260 S.W.2d 637, writ refused, n. r. e., and the holding, as a matter of law, that speed was not a proximate cause of the collision in that case must be considered as applying only to its peculiar facts which indeed are peculiar and need not be detailed here.

It is wholly out of keeping with reality to hold that an operator of an automobile traveling on a modern, heavily-traveled public highway cannot and should not reasonably foresee that an automobile approaching from the opposite direction may, for some reason, enter the wrong lane of traffic and thus be endangered by excessive

speed which makes stopping or turning aside to avoid a collision impossible or more difficult. I apprehend that the court was correct in its statement in San Antonio & A. P. Ry. Co. v. Behne, Tex. Com.App., 231 S.W. 354, 356, when, in referring to cases bearing on the element of anticipation in proximate cause, it said: "From them, however, it will be seen that our Supreme Court has uniformly applied what might be termed a practical, common sense test, the test of common experience. The expression 'natural and probable result' has been used and interpreted to mean what should reasonably be anticipated in the light of common experience applied to the surrounding circumstances." Common experience teaches that thousands of automobiles enter wrong highway traffic lanes every day. It is a matter of common knowledge that a fair proportion of collisions on highways are "head-on" collisions, resulting from one of the automobiles being in the wrong lane of traffic. I submit, therefore, that we should not adopt a rule which must always result in a holding that speed is not a proximate cause of a collision, as a matter of law, where the offending vehicle is in its own lane of traffic and collides with another vehicle in the wrong lane of traffic. Assume there is a collision between a motorist traveling at a speed of ninety miles per hour in his own lane of traffic and one traveling in an opposite direction who, as a reasonably prudent person, has concluded that he has ample time to pass a preceding automobile and has pulled into the wrong lane of traffic in order to do so. Should we and would we hold, as a matter of law, that no liability for damages could be imposed on the speeder on the ground that he could not reasonably have foreseen that the injured party would enter the wrong lane of traffic for the purpose of passing the preceding automobile? I think not. And if the correct answer is no, the majority's theory that excessive speed only furnishes the condition and gives rise to the oc-

casion for the collision but cannot be the proximate cause thereof has no validity.

In support of their holding that there is no proximate cause, as a matter of law, because the bus driver could not foresee that the Chevrolet would strike the rear of the Ford and propel it into the wrong lane of traffic the majority cite and quote at length from Wiley v. Mercer, 282 S.W.2d 87, a Court of Civil Appeals' decision. I respectfully suggest that, considered in the light of a long line of analagous decisions by this Court, this holding of the majority in this case, as well as the holding of the Court of Civil Appeals in Wiley v. Mercer on which it is based, are erroneous. This conclusion is inescapable under the very rule announced by the majority in the first part of their opinion, in which they say: "It is not necessary that the defendant should or would reasonably anticipate the very consequences or the exact nature of the plaintiff's injury or the precise manner of its infliction in order that such consequence be foreseeable."

The true rule is correctly stated by this Court in Sullivan v. Flores, 134 Tex. 55, 132 S.W.2d 110, 111, cited by the majority, where it is said that all that is required as a predicate for liability of a negligent defendant is that "As a person of ordinary intelligence and prudence, he should have anticipated the danger to others created by his negligent act, and the rule does not require that he anticipate just how injuries will grow out of that dangerous situation." In that case the driver of a taxicab was negligently making a U turn in the middle of a street when a spare tire, properly attached to the rear of the cab, was knocked loose by another automobile and rolled several feet down the street, striking the minor plaintiff. The Court of Civil Appeals held no proximate cause as a matter of law, reasoning that the defendant, although negligent, could not have foreseen that the plaintiff would be injured by the spare

tire being knocked loose. This Court reversed the holding of the Court of Civil Appeals, saying: "Of course, he could not have anticipated the exact nature of such injuries, but liability does not depend upon his having been able to do so. It is sufficient if he should have anticipated an injury of the general nature of that suffered by this minor. It is, no doubt, unusual for a spare tire to be knocked from its setting and put in motion by a collision, but that fact does not exonerate the negligent driver from liability." On the same theory it can be said in this case that it is unusual for one automobile to be knocked from its own into the wrong lane of traffic, but that fact does not exonerate the negligent driver from liability. In the same spirit this Court refused in Missouri-Kansas-Texas R. Co. of Texas v. McLain, 133 Tex. 484, 126 S.W.2d 474, to hold, as a matter of law, that operatives of a train left negligently blocking a street could not foresee that an approaching motorist might fail to see the train and be forced at the last minute to make a sudden application of his brakes, thereby causing his automobile to skid on the wet street and strike the plaintiff pedestrian standing nearby. And in Carey v. Pure Distributing Corp., 133 Tex. 31, 124 S.W.2d 847, this Court, on the same theory, refused to hold, as a matter of law that the act of the defendant in negligently fastening oil cans in a truck was not a proximate cause of injuries to a plaintiff who was lying on a cot beside a road and was hit on the head by a flying lid which had been blasted loose from one of the cans when the can fell from the truck and struck the highway. Applicable here also is the rule laid down in Gulf, C. & S. F. Ry. Co. v. Ballew, Tex.Com.App., 66 S.W.2d 659, 661, and quoted with approval by this Court in the recent case of Walker, Inc., v. Burgdorf, 150 Tex. 603, 244 S.W.2d 506, 510, as follows: "When the new cause or agency concurs with the continuing and co-operating original negligence in working the injury, the original negligence remains a proximate cause of the injury, and the fact that the new concurring cause or agency may not in such case have been reasonably foreseeable should not relieve the wrongdoer of liability."

I submit that if the rules announced and followed in the foregoing cases be applied and followed in the instant case the finding of the jury that the excessive speed of the bus was a proximate cause of the collision should not be nullified on the theory that the bus driver could not have foreseen that the Chevrolet would strike the rear of the Ford and knock it into the pathway of the bus. To sustain the finding of proximate cause under that rule it is not necessary that the bus driver should have foreseen the manner in or by which the Ford entered the wrong traffic lane, whether by being propelled into it by another automobile, as it was, by skidding into it on the wet road surface, by the locking and grabbing of brakes on the left side, by the sudden pull of a blow-out of a tire on that side, or by being deliberately driven there by the operator in an effort to pass another automobile.

I am satisfied that the holding that excessive speed could not be a proximate cause of the collision cannot validly rest on an absence of the element of foreseeability. The question remains whether the holding can rest on an absence of the element of causation, a matter the majority seem not to have considered. In my opinion it cannot.

The jury made no finding as to what it regarded as a reasonable speed. Any speed less than 54 miles per hour would have allowed additional time for the driver to apply his brakes and decelerate his speed after the Ford entered the wrong traffic lane. The controlling facts on this phase of the case are that the bus and the three automobiles were approaching each other on a wet highway with the

bus traveling at an excessive rate of speed of at least 54 miles per hour or 80 feet per second. At that rate of speed it covered the distance from where it was when the Ford entered its lane of traffic to the point of collision in a minimum of three and one-half seconds. It is not unreasonable to assume that the jury might have believed a speed of 40 miles per hour was a reasonable speed for the heavy bus to have been traveling under the circumstances. At 40 miles per hour the bus would have been moving at a speed of 58⅔ feet per second, and at such speed would have required approximately five seconds to cover the same distance it would have covered in three and one-half seconds at 54 miles per hour. It thus appears that even under the majority's version of the facts the excessive speed of the bus was a substantial factor in bringing about the collision. That is all that is required to establish the presence of the element of causation in proximate cause. Prosser on Torts, p. 321, sec. 46; Hopson v. Gulf Oil Corp., 150 Tex. 1, 237 S.W.2d 352, 355.

In my opinion the Court of Civil Appeals erred in holding, as a matter of law, that none of the negligent acts of the bus driver was a proximate cause of the collision. The Court of Civil Appeals also held that the jury findings of proximate cause were so contrary to the great weight and overwhelming preponderance of the evidence as to be clearly wrong. That court's jurisdiction on that question is final and would require a reversal of the trial court's judgment and a remand of the cause for retrial. I do not share petitioner's view that that question was not properly or adequately preserved by respondent for review by the Court of Civil Appeals. Accordingly, I would reverse the judgment of the Court of Civil Appeals and remand the cause to the trial court.

SMITH and WALKER, JJ., join in this opinion.